ROB BONTA
Attorney General of California
DARRELL W. SPENCE (SBN: 248011)
Deputy Attorney General
STACEY L. LEASK (SBN: 233281)
KATHERINE J. GRAINGER (SBN: 333901)
TRUMAN S. BRASLAW (SBN: 356566)
Deputy Attorneys General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3524
 Fax:  (415) 703-5480
 E-mail:  Stacey.Leask@doj.ca.gov
*Attorneys for Defendants State Superintendent of Public Instruction Tony Thurmond and Attorney General Rob Bonta*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.S., et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>RIVERSIDE UNIFIED SCHOOL DISTRICT, et al.<br><br>　　　　　　　　　　Defendants. | 5:24-cv-02480-SSS (SPx)<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:　　　　May 16, 2025<br>Time:　　　　2:00 p.m.<br>Courtroom:　2<br>Judge:　　　The Honorable Sunshine Suzanne Sykes<br>Trial Date:　Not Set<br>Action Filed: 11/20/2024 |

1    Pursuant to Federal Rule of Evidence 201, Defendants State Superintendent of
2    Public Instruction Tony Thurmond and Attorney General Rob Bonta (collectively,
3    State Defendants) hereby request that the Court take judicial notice of the following
4    documents in support of their Motion to Dismiss.  These documents are relevant to
5    establish that the Court lacks subject matter jurisdiction to hear any of Plaintiffs'
6    claim, and that Plaintiffs fail to state cognizable claims as a matter of law.

## MATTERS TO BE NOTICED

Report of the Assembly Committee on Education on California Assembly Bill 1266 (2013), a true and correct copy of which is attached hereto as **Exhibit 1** and available online at
https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201320140AB1266.

## LEGAL STANDARD

Federal Rule of Evidence 201(b) establishes the criteria for judicially noticed facts: "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Further, Federal Rule of Evidence 901(b)(7) provides that evidence a public record or report is from the public office where items of that nature are kept satisfies the requirement that admitted evidence be authenticated.  Federal Rule of Evidence 902(5) likewise allows for the self-authentication of official publications issued by a public authority.

When considering a motion to dismiss under Rule 12(b)(1), the court may look beyond the pleadings at documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *DeFiore v. SOC LLC*, 85 F.4th 546, 533 n. 2 (9th Cir. 2023) (materials of which a district court may take judicial notice are not considered extrinsic evidence for purposes of Rule 12(b)(1)); *Applied Underwriters, Inc. v. Lara*, 530 F. Supp. 3d 914, 923 (E.D. Cal.

1  2021) (A court ruling on a Rule 12(b)(1) motion to dismiss must consider the entire
2  complaint and other sources incorporated by reference as well as judicially
3  noticeable matters).
4    A court may take judicial notice of "matters of public record" without
5  converting a motion to dismiss under Rule 12(b)(6) into a motion for summary
6  judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

## ARGUMENT

8    A court may take judicial notice of the legislative history of a piece of
9  legislation, including, for instance, "prior versions of the bill, amendments,
10 committee reports, and the written recommendations of the legislative counsel."
11 *Est. of Graham v. Sotheby's Inc.*, 860 F. Supp. 2d 1117, 1124 (C.D. Cal. 2012)
12 (citing *Chaker v. Crogan*, 428 F.3d 1215, 1223 n. 8 (9th Cir. 2005)); *Zephyr v.
13 Saxon Mortg. Services, Inc.*, 873 F. Supp. 2d 1223, 1226 (E.D. Cal. 2012) (granting
14 request for judicial notice of California legislative history documents that were
15 readily available and whose authenticity was not challenged.)
16   The attached legislative committee report (Exhibit 1) provides background on
17 the State Legislature's purposes for adopting Assembly Bill 1266. The report is
18 publicly available, and its accuracy cannot be reasonably questioned. Moreover,
19 the content of the report is relevant to State Defendants' arguments in the Motion to
20 Dismiss.

## CONCLUSION

22   For the foregoing reasons, the Court should grant this request for judicial
23 notice.

Dated: March 28, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
DARRELL W. SPENCE
Supervising Deputy Attorney General

/S/ Stacey L. Leask

STACEY L. LEASK
Deputy Attorney General
*Attorneys for Defendants State Superintendent of Public Instruction Tony Thurmond and Attorney General Rob Bonta*

# EXHIBIT 1

AB 1266
Page 1

Date of Hearing: April 17, 2013

## ASSEMBLY COMMITTEE ON EDUCATION
Joan Buchanan, Chair
AB 1266 (Ammiano) – As Introduced: February 22, 2013

SUBJECT: Pupil rights: sex-segregated school programs

SUMMARY: Specifies that a pupil shall be permitted to participate in sex-segregated school programs, activities, and facilities, including athletic teams and competitions, consistent with this or her gender identify, irrespective of the gender listed on the pupil's records.

EXISTING LAW:

1) Prohibits discrimination on the basis of disability, gender, nationality, race or ethnicity, religion, sexual orientation or any other characteristic included in the definition of hate crime, as defined in the Penal Code, in any program or activity conducted by an educational institution that receives or benefits from, state financial assistance or enrolls pupils who receive state student financial aid. (Education Code (EC) Section 220)

2) Defines "gender" as "sex, and includes a person's gender identity and gender related appearance and behavior whether or not stereotypically associated with the person's assigned sex at birth." (EC 210.7)

3) Requires that participation in a particular physical education activity or sport, if required of pupils of one sex, be available to pupils of each sex. (EC 221.5)

4) Provides that an educational institution is not prohibited from maintaining separate toilet facilities, locker rooms, or living facilities for the different sexes so long as comparable facilities are provided. (EC 231)

FISCAL EFFECT: This bill is keyed non-fiscal by the Legislative Counsel.

COMMENTS: Current law prohibits discrimination based on several characteristics, including, sex, sexual orientation, and gender identity. Current law protects from harassment and discrimination any pupil whose identity, appearance or behavior is different than the stereotypical characteristic of that pupil's assigned sex at birth. This bill requires a pupil be permitted to participate in sex-segregated school programs, activities, and facilities including athletic teams and competitions, consistent with his or her gender identity, regardless of the gender listed on the pupil's records.

Attempted court challenges to California's antidiscrimination statutes have been unsuccessful. Plaintiffs in the *California Education Committee, LLC, et al. v. Jack O'Connell* court case sought to challenge the definition of "gender" in the nondiscrimination provisions of the Education Code as amended through SB 777, Chapter 569, Statutes of 2007, and argued that SB 777 placed "educators in the impossible position of (1) reading the minds of individuals to determine the individual's self-defined sexual identity so as not to inadvertently discriminate against an individual based upon their self-defined sex and (2) protecting the privacy and safety of all students from persons of the opposite sex." Additionally, plaintiffs argued that a particular

student's privacy will be invaded because the school district "will allow transgender students to use whatever facility they identify with." The State Superintendent of Public Instruction (SPI) filed a demurrer and moved to dismiss the case. The Sacramento Superior Court granted the motion to dismiss the case for plaintiffs' failure "to state facts sufficient to constitute a cause of action."

In an Amici Curiae submitted in support of the Demurrer filed by then SPI, Jack O'Connell, the National Center for Lesbian Rights, Equality California, and Gay-Straight Alliance argue that "subjective discomfort in the presence of transgender individuals does not create a protected privacy interest" and point out that "claims of discomfort in the presence of a minority group propped up decades of racial segregation in housing, education, and access to public facilities like restrooms and drinking fountains." Furthermore, the Amici Curiae notes that in a discrimination case brought by a transgender student, a Massachusetts court held that school officials discriminated based on gender when they applied the school's dress code to forbid the plaintiff, who had a female gender identity, from wearing girls' clothes. The court wrote that it could not allow the stifling of plaintiff's selfhood merely because it causes some members of the community discomfort and concluded that the school could not place restrictions on transgender students that were not placed on other female students. Lastly, the Amici argues that "a non-discriminatory policy permitting transgender students to use facilities that correspond to their consistently expressed gender identity would have little or no effect on the privacy interests of other students because schools can easily provide reasonable accommodations to balance the privacy interests of all students.

Research relative to transgender students in sports. Gender segregation in sports has in part been based on a concern about unfair physical advantages. Typically those arguments have centered around creating an "unfair competitive advantage" and is most often suggested in discussions about transgender women or girls competing on a women's or girls' team. A national think tank co-sponsored by the National Center for Lesbian Rights and the Women's Sports Foundation issued a report to provide guidance to high school and college athletic programs about providing transgender student athletes with equal opportunities to participate in school-based sports programs.

The report titled, *On the Team: Equal Opportunity for Transgender Students*, points out that the aforementioned concerns "are based on three assumptions: one, that transgender girls and women are not 'real' girls or women and therefore not deserving of an equal competitive opportunity; two, that being born with a male body automatically gives a transgender girl or woman an unfair advantage when competing against non-transgender girls and women; and three, that boys or men might be tempted to pretend to be transgender in order to compete in competition with girls or women." The report argues that these assumptions are not well founded, and asserts that "the decision to transition from one gender to the other—to align one's external gender presentation with one's internal sense of gender identity—is a deeply significant and difficult choice that is made only after careful consideration and for the most compelling of reasons." The report further points out that the fear that transgender women will have an unfair advantage over non-transgender women, is based on the belief that transgender girls or women who have gone through male puberty may have an unfair advantage due to the growth in long bones, muscle mass, and strength that is triggered by testosterone, however the report notes that a growing number of transgender youth are undergoing medically guided hormonal treatment prior to puberty, thus transgender girls who transition in this way do not go through a male puberty, and therefore it is argued that their participation in athletics as girls does not raise the same equity

concerns. It is further asserted in the report that even transgender girls who do not access hormone blockers or cross-gender hormones display a great deal of physical variation, and to assume that all male-bodied people are taller, stronger, and more highly skilled in a sport than all female-bodied people is not accurate. Lastly, the report notes that fears that boys or men will pretend to be female to compete on a girls' or women's team are unwarranted given that in the entire 40 year history of "sex verification" procedures in international sport competitions, no instances of such "fraud" have been revealed. This report recommends that high schools permit transgender athletes to play on teams consistent with the student's gender identity, without regard to whether the student has undertaken any medical treatment.

In 2012, the California Interscholastic Federation (CIF), the body that governs interscholastic athletics, adopted the following policy: "All students should have the opportunity to participate in CIF activities in a manner that is consistent with their gender identity, irrespective of the gender listed on a student's records."

Some school districts have adopted policies and protocols that allow transgender students to participate in physical education, as all other students. However, as it relates to competitive sports, some districts have policies and protocols that allow for situations to be handled on a case-by-case basis. This bill would take away this type of discretion from local school districts and create a uniform policy for participation in sports.

The author states, "Athletics and physical education classes, which are often segregated by sex, provide numerous well-documented positive effects for a student's physical, social, and emotional development. Playing sports can provide student athletes with important lessons about self-discipline, teamwork, success, and failure, as well as the joy and shared excitement that being a member of a sports team can bring. When transgender students are denied the opportunity to participate in physical education classes in a manner consistent with their gender identity, they miss out on these important benefits and suffer from stigmatization and isolation. In addition, in many cases, students who are transgender are unable to get the credits they need to graduate on time when, for example, they do not have a place to get ready for gym class."

Restroom and locker room accessibility. In light of the existing non-discrimination statutes, some school districts already have policies that address restroom accessibility for transgender students. For example, the San Francisco Unified School District authorizes students to have access to the restroom that corresponds to their gender identity exclusively and consistently asserted at school, and states that "where available, a single stall bathroom may be used by any student who desires increased privacy, regardless of the underlying reason. The use of such a single stall bathroom shall be a matter of choice for a student, and no student shall be compelled to use such bathroom."

The Los Angeles Unified School District issued a Reference Guide in 2011 relating to transgender and non-conforming students and states that schools may maintain separate restroom facilities for male and female students however, a student may be provided access to a restroom facility that corresponds to the gender identity that the student asserts at school. Additionally, the Reference Guide notes that if there is a reason or desire for increased privacy and safety, regardless of the underlying purpose or cause, any student may be provided access to a reasonable alternative restroom such as a single stall "gender neutral" restroom or the health office restroom.

Both districts have similar policies or protocols relative to locker room accessibility which is to allow transgender students to use the locker room corresponding to their gender identity asserted at school, considering available accommodation and the needs and privacy concerns of all students involved, and if there is a reason or request for increased privacy and safety regardless of the underlying reason, students may be provided access to an alternative locker room such as a private area such as a nearby restroom stall with a door or an area separated by a curtain or a separate changing schedule and ensuring that the student's gender identity remains confidential.

A question has been raised as to whether this bill would prohibit districts from continuing to provide such alternatives. In some situations there may be a desire on the part of a pupil, to use a gender neutral facility for additional privacy or for other reasons, particularly when perhaps the pupil has recently come out and prefers a gender neutral facility for the short term. The author's intent, according to the author's staff, is to establish a policy whereby a transgender student is not restricted from accessing a facility corresponding to his or her gender identity, but at the same time still provides the ability for alternative accommodations, upon a pupil's request provided that the alternative is an option and not a requirement that is inconsistent with the pupil's rights and desires. The author does not believe the bill inhibits a school from offering alternatives under current law.

Other states. According to the Transgender Law Center, several states have published guidelines to ensure compliance with antidiscrimination laws. The Massachusetts Department of Elementary and Secondary Education issued the following:

"In all cases, the principal should be clear with the student (and parent) that the student may access the restroom, locker room, and changing facility that corresponds to the student's gender identity."

The guidance encourages administrators to work with students and parents to address the needs of each student with regard to facility access, but cautions that another student's discomfort sharing a facility with a transgender student "is not a reason to deny access to the transgender student."

Washington's Superintendent of Public Instruction released the following guideline:

School districts should allow students to use the restroom that is consistent with their gender identity consistently asserted at school. Any student – transgender or not - who has a need or desire for increased privacy, regardless of the underlying reason, should be provided access to an alternative restroom (e.g., staff restroom, health office restroom). This allows students who may feel uncomfortable sharing the facility with the transgender student(s) the option to make use of a separate restroom and have their concerns addressed without stigmatizing any individual student. No student, however, should be required to use an alternative restroom because they are transgender or gender nonconforming.

The Connecticut Human Rights Commission issued the following:

Students should have access to the restroom that corresponds to their gender identity asserted at school. Schools may maintain separate restroom facilities for male and female students provided that they allow students to access them based on their gender identity and not exclusively based

on student's assigned birth sex.... Under no circumstances may a student be required to use a restroom facility that is inconsistent with that student's asserted gender identity.

Harm to the pupil. Pupils who have been denied access to facilities corresponding to their gender identities can suffer physical and academic harm. For example, an eight-year-old transgender girl in a suburban school district who was told to use a nurse's restroom would intentionally avoid drinking and eating certain food to avoid having to use the restroom, rather than face questions from her classmates as to why she would not use a girl's restroom. A transgender boy attending a middle school in the Bay Area was told he had to use the nurse's restroom and was prohibited from entering a boy's restroom. The pupil felt more comfortable using the boy's restroom and subsequently received detention. The boy was also threated with suspension from school for defying school authorities.

The 2009 national school climate survey indicates that lesbian, gay, bisexual, and transgender (LGBT) youths feel unsafe at school, and are more than three times as likely as other students to have missed class or an entire day of school because of feeling unsafe or uncomfortable. Situations such as these prevent transgender students from getting the credits they need to graduate on time while others drop out of school.

Arguments in support. The author states, "All students should have a fair opportunity to participate in school programs, activities and facilities. Yet transgender young people often must overcome significant stigma and challenges. This bill would ensure that all pupils, including those who are transgender, have equal access to all educational opportunities and have the chance to fully participate and succeed in school and graduate on time with their classmates."

Arguments in opposition. "As the governor has recently reminded us, subsidiarity – allowing decisions to be made at the level closest to the problem – makes sense in addressing real needs. A few of our students may be struggling with or confused about their gender identity or expression, but individual responses handled confidentially while protecting the dignity of the student, involving the parents, honoring the privacy rights of others, and maintaining the good order of the school would be far more preferable. We suggest that one more state law imposing a "one size fits all" politically correct agenda is not a good public policy. Solidarity with those who may be the object of discrimination is appropriate and should be shared by all, but we ought to balance that with common sense and trust in the leadership of the local school level."

Technical amendment. As currently drafted, this bill requires a pupil be permitted to "participate in sex-segregated school programs, activities and *facilities* . . ." The language should be worded to permit pupils to *use,* instead of *participate in* facilities. **Staff recommends** a technical amendment to add "use".

Previous legislation. AB 266 (Ammiano), is an identical bill that was held by the author in this Committee last year.

REGISTERED SUPPORT / OPPOSITION:

Support

Equality California (co-sponsor)
Gay-Straight Alliance Network (co-sponsor)

Transgender Law Center (co-sponsor)
American Civil Liberties Union
Bay Area Youth Summit
California Communities United Institute
California Lesbian, Gay, Bisexual, and Transgender Health & Human Services Network
California Teachers Association
Child and Adolescent Gender Center
Family Equality Council
Gay and Lesbian Community Services Center of Orange County
Gay, Lesbian & Straight Education Network
Gay, Lesbian & Straight Education Network, Orange County
Labor/Community Strategy Center
L.A. Gay & Lesbian Center
LGBT Community Center of the Desert
Los Angeles Gender Center
Los Angeles Unified School District
Mexican American Legal Defense and Educational Fund
National Center for Lesbian Rights
National Gay and Lesbian Task Force
North County LGBTQ Resource Center
Our Family Coalition
Pacific Pride Foundation
Public Counsel
Restorative Schools Vision Project
San Diego Cooperative Charter School
San Diego LGBT Community Center
Spectrum LGBT Center in San Rafael
Trevor Project
Youth Justice Coalition
One individual

Opposition

California Catholic Conference
Capitol Resource Institute
Traditional Values Coalition

Analysis Prepared by:   Sophia Kwong Kim / ED. / (916) 319-2087

## CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | **Save Girls' Sports, et al v Tonly Thurmond, et al.** | No. | **5:24-cv-02480-SSS-SP** |

I hereby certify that on <u>March 28, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>March 28, 2025</u>, at Sacramento, California.

| | |
|---|---|
| Christopher R. Irby | *S/ Christopher R. Irby* |
| Declarant | Signature |

SA2025300597
38912101.docx