Rob Bonta
Attorney General of California
Darrell W. Spence (SBN 248011)
Supervising Deputy Attorney General
Stacey L. Leask (SBN 233281)
Katherine J. Grainger (SBN 333901)
Truman S. Braslaw (SBN 356566)
Deputy Attorneys General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3524
 Fax:  (415) 703-5480
 E-mail:  Stacey.Leask@doj.ca.gov
*Attorneys for Defendants State Superintendent of Public Instruction Tony Thurmond and Attorney General Rob Bonta*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **T.S., et al.**<br><br>Plaintiffs,<br><br>v.<br><br>**RIVERSIDE UNIFIED SCHOOL DISTRICT, et al.**<br><br>Defendants. | 5:24-cv-02480-SSS (SPx)<br><br>**STATE DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS**<br><br>Date: May 16, 2025<br>Time: 2:00 p.m.<br>Courtroom: 2<br>Judge: The Honorable Sunshine Suzanne Sykes<br>Trial Date: Not Set<br>Action Filed: November 20, 2024 |

**TABLE OF CONTENTS**

Page

ARGUMENT ........................................................................................................... 1
    I.     Plaintiffs Lack Standing ........................................................................ 1
          A.     No Cognizable Injury ................................................................. 1
          B.     Plaintiffs Fail to Demonstrate the Requisite Causal Connection ................. 2
          C.     Plaintiffs' Claims Are Not Redressable ........................................... 3
          D.     Plaintiff Save Girls' Sports Lacks Standing ...................................... 4
    II.    Sovereign Immunity Bars Plaintiffs' Challenge to State Law ................ 5
    III.   Plaintiffs Fail to State Cognizable Claims Against State Defendants ...................... 6
          A.     Plaintiffs Fail to Establish That State Defendants Are Proper Defendants for Their Title IX Claims ................................................ 6
          B.     Plaintiffs Fail to Plead Facts That Support Title IX Claims ........ 7
          C.     Plaintiffs Fail to Address State Defendants' Notice Argument ................... 9

# TABLE OF AUTHORITIES

Page

**CASES**

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................................................. 6, 7

*Bano v. Union Carbide Corp.*
  361 F.3d 696 (2d Cir. 2004) ....................................................................................... 5

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*
  526 U.S. 629 (1999) ............................................................................................. 6, 8

*Doe v. Horne*
  115 F.4th 1083 (9th Cir. 2024) ............................................................................. 9, 10

*Ex parte Young*
  209 U.S. 123 (1908) ............................................................................................. 4, 5

*Food & Drug Administration v. Alliance for Hippocratic Medicine*
  602 U.S. 367, 395, 396 (2024) .................................................................................. 4

*Gebser v. Lago Vista Indep. School Dist.*
  524 U.S. 274 (1998) ............................................................................................. 9, 10

*Grabowski v. Arizona Bd. of Regents*
  69 F.4th 1110 (9th Cir. 2023) .................................................................................... 9

*Havens Realty Corp v. Coleman*
  455 U.S. 363 (1982) .................................................................................................. 4

*Hecox v. Little*
  104 F.4th 1061 (9th Cir. 2024), *as amended* (June 14, 2024) ................................. 9

*La. Asociacion De Trabajadores De Lake Forest v. City of Lake Forest*
  624 F.3d 1083 (9th Cir. 2010) .................................................................................. 4

*Loper Bright Enters. v. Raimondo*
  603 U.S. 369 (2024) ................................................................................................ 10

*Los Angeles Cnty. Bar Ass'n v. Eu*
  979 F.2d 697 (9th Cir. 1992) .................................................................................... 5

*Lujan v. Defs. of Wildlife*
  504 U.S. 555 (1992) .................................................................................................. 2

*Mansourian v. Regents of Univ. of Cal.*
  602 F.3d 957 (9th Cir. 2010) .............................................................................. 9, 10

# TABLE OF AUTHORITIES
## (continued)

Page

*Nat'l Audubon Soc'y, Inc. v. Davis*
   307 F.3d 835 (9th Cir. 2002) ............................................................................ 5

*Nat'l Fed'n of Blind v. Target Corp.*
   582 F. Supp. 2d 1185 (N.D. Cal. 2007) ............................................................ 5

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*
   508 U.S. 656 (1993) .......................................................................................... 2

*Neal v. Bd. of Trustees of Cal. State Univ.*
   198 F.3d 763 (9th Cir. 1999) ............................................................................ 8

*North East Medical Services, Inc. v. California Dept. of Health Care Services*
   712 F.3d 461 (9th Cir. 2013) ............................................................................ 4

*Parents for Privacy v. Barr*
   949 F.3d 1210 (9th Cir. 2020) .......................................................................... 7

*Pennhurst State Sch. & Hosp. v. Halderman*
   451 U.S. 1 (1981) ....................................................................................... 9, 10

*Pennhurst State Sch. & Hosp. v. Halderman*
   465 U.S. 89 (1984) ............................................................................................ 5

*Snoeck v. Brussa*
   153 F.3d 984 (9th Cir. 1998) ............................................................................ 5

*Soule v. Connecticut Association of Schools*
   90 F.4th 34 (2d Cir. 2023) (en banc) ..................................................... 1, 3, 5, 9

*Steel Co. v. Citizens for a Better Env't*
   523 U.S. 83 (1998) ............................................................................................ 4

*TransUnion LLC v. Ramirez*
   594 U.S. 413 (2021) .......................................................................................... 3

*United Food & Com. Workers Union Loc3 751 v. Brown Grp., Inc.*
   517 U.S. 544 (1996) .......................................................................................... 5

*Wash. Env't. Council v. Bellon*
   732 F.3d 1131 (9th Cir. 2013) .......................................................................... 3

**STATUTES**

California Education Code
   § 220 .................................................................................................................. 1

# TABLE OF AUTHORITIES
### (continued)

Page

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    Eleventh Amendment ................................................................................................ 5

State Defendants' Motion to Dismiss (Motion) should be granted. Plaintiffs abandoned their claim against State Defendants for Violation of California Education Code section 220. ECF No. 46 at 15, n. 4. As to the remaining claims against State Defendants, Plaintiffs fail to demonstrate that they have standing, or any viable claims against State Defendants under the facts pled. Accordingly, the Motion should be granted in its entirety.

## ARGUMENT

### I. PLAINTIFFS LACK STANDING

#### A. No Cognizable Injury

Plaintiffs argue that they have been harmed by M.L.'s participation on the girls' cross-country team, relying on *Soule v. Connecticut Association of Schools*, 90 F.4th 34 (2d Cir. 2023) (en banc). In *Soule*, four cisgender female high school student athletes sued their athletic conference and its members' school districts, alleging that the conference's policy of allowing school students to participate in school-sponsored athletics consistent with their gender identity constituted sex discrimination in violation of Title IX. *Id*. at 40. While the *Soule* court did not reach the merits of the claims, it concluded that the plaintiffs, who participated in track events, had standing, because they alleged specific instances in which they ran against and had placed directly or very close behind transgender female athletes in athletic competitions, "rather than, for instance, bystanders who simply wish to challenge the [] Policy because they disagree with it on principle." *Id*. at 40, 46. In other words, the plaintiffs in *Soule* pointed to tangible races in which they competed against, and lost to, a transgender student athlete.

Here, unlike in *Soule* (and even assuming the *Soule* court was correct to find plaintiffs' injury sufficient to confer standing, which State Defendants do not concede), Plaintiffs do not allege that but for M.L.'s participation, they would have won, or even significantly placed in, any specific races. In fact, the Mt. Sac Invitational is the only race Plaintiffs have identified as involving either T.S. or

1

K.S., and because T.S. was not selected to compete on the varsity team when a spot became available, she has no standing to argue that she was ever displaced by M.L.[1] As to K.S., the FAC does not identify any race or opportunity where K.S. was affected by M.L.'s participation. *Id*. at 8:7-8. Thus, Plaintiffs' allegations of injury, lacking any identified concrete loss of a title, placement, or opportunity, are entirely speculative and insufficient to establish standing.[2]

Plaintiffs also broadly claim an alleged "inability to compete on an equal footing." ECF No. 46 at 6. But the case Plaintiffs use to support their argument (*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656 (1993)), is inapposite, as the case involved an equal protection challenge to the award of a government contract, and the Court expressly limited its holding to those specific types of cases.[3] *Id*. Nor does it supplant the requirement that Plaintiffs must identify an "actual or imminent" injury to establish standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).[4] Because Plaintiffs have not stated any concrete or particularized injury that is actual or imminent, they have no standing. *Id*.

B.   **Plaintiffs Fail to Demonstrate the Requisite Causal Connection**

Even if they had suffered injury, Plaintiffs fail to demonstrate that their alleged injuries are attributable to State Defendants. Plaintiffs broadly argue that the existence of AB 1266 enables their school to make roster decisions causing them harm. ECF No. 46 at 7, n. 2. At the same time, Plaintiffs allege that the high

---

[1] Plaintiffs argue that who ran in the race is "irrelevant." ECF No. 46 at 7:1-2.
[2] Plaintiffs identify "three instances" where M.L. finished in the top bracket for girls and received a medal. However, none involved lost medals or placements for T.S. or K.S. FAC ¶¶ 150, 151, 152, 368. Thus, these are not harms to Plaintiffs. Further, it is entirely speculative who would have won or placed in any of those races had M.L. not competed.
[3] *City of Jacksonville* involved an equal protection claim where plaintiffs alleged they had been disadvantaged by a governmental program that limited opportunities. *Id*. The Court made clear that its standing analysis was limited to those specific circumstances: "The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment . . . ." *Id*. at 666 (emphasis added).
[4] Plaintiffs' pleadings arguably also do not plead sufficient facts that would demonstrate M.L. has any real competitive advantage, only that she is transgender, which is insufficient.

2

school athletic director intervened to remove T.S. from the Varsity Top 7 lineup in advance of the Mt. Sac Invitational "and replaced her with M.L., who did not meet the requisite varsity standards, a move that was atypical and an unauthorized departure from regular procedure where the coach determines the varsity lineup." *Id*. at 7:17-20.  Such allegations demonstrate that the alleged injury is not attributable to AB 1266, but to the alleged separate and independent actions of the school defendants.  Without any allegations showing that either the AG or the SPI dictated the school defendants' decisions or otherwise enforced AB 1266, there is no way to trace the alleged harms to the AG or the SPI.  *See Wash. Env't. Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013).

### C. Plaintiffs' Claims Are Not Redressable

Plaintiffs likewise have not demonstrated redressability.  "[P]laintiffs must demonstrate standing for each claim . . . and for each form of relief that they seek[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).  In *Soule*, the Court concluded that plaintiffs had standing to seek an injunction to alter past athletic records; however, it also held that plaintiffs lacked "standing to seek remedies for generalized grievances about the CIAC Policy" and were not entitled to relief to "update records that ha[d] no bearing on Plaintiffs' own athletic achievement . . . ." 90 F.4th at 50.  Here, Plaintiffs seek to enjoin AB 1266, which has been in effect for over ten years.  This sweeping relief goes far beyond changing Plaintiffs' own athletic records (which the FAC does not seek) and would not remedy T.S.'s alleged loss from not competing on the varsity roster at the Mt. Sac Invitational.  AB 1266 does not guarantee spots on sports teams, nor outcomes in races, and the race is over and cannot be repeated.  Thus, enjoining AB 1266 will not redress any alleged past harm, nor provide any prospective relief under the facts alleged since it is not possible to redress such speculative future events.[5]  Further,

---

[5] Plaintiffs also have not alleged that any transgender female athletes will be competing for a spot on the varsity girls' cross-country team next season, and thus, have not plausibly
(continued…)

while Plaintiffs state that they do not intend to violate the rights of transgender students, that is the ultimate effect of the relief they seek, and this is relevant because redressability requires consideration of whether the relief sought is "an acceptable Article III remedy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

Plaintiffs' claim that money damages would redress their alleged injuries is likewise unavailing. As demonstrated below, Plaintiffs fail to plead any cognizable Title IX claim against State Defendants that would entitle them to damages.[6]

### D. Plaintiff Save Girls' Sports Lacks Standing

Plaintiffs also fail to demonstrate that Save Girls' Sports (SGS) has standing. Relying on *Havens Realty Corp v. Coleman*, 455 U.S. 363, 379 (1982), Plaintiffs argue that an organizational plaintiff establishes standing based on "a diversion of its resources and a frustration of its mission." ECF No. 46 at 13:23 (*citing La. Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)). However, in *Food & Drug Administration v. Alliance for Hippocratic Medicine*, the Supreme Court clarified *Havens* and held that diversion of resources in response to a defendant's actions is insufficient to establish organizational standing. 602 U.S. 367, 395-96 (2024). Instead, organizational standing is limited to circumstances where a defendant's actions "directly affected and interfered with [a plaintiff's] core business activities." *Id.* at 395. Here, Plaintiffs' assertions that SGS, an advocacy organization, has been compelled to divert substantial resources in opposition to AB 1266 are plainly insufficient to confer organizational standing.

---

alleged that enjoining AB 1266 will redress any claimed deprivation of equivalent athletic opportunity under Title IX.

[6] Although Plaintiffs brought Title IX claims against State Defendants in addition to the school defendants, Plaintiffs' Opposition to State Defendants' Motion to Dismiss appears to center on an alleged facial challenge to AB 1266, which is outside of Title IX and any abrogation of state sovereign immunity. ECF No. 46 at 9-10. Any such facial challenge would be limited to injunctive and declaratory relief. *See Ex parte Young*, 209 U.S. 123, 155-57 (1908); *North East Medical Services, Inc. v. California Dept. of Health Care Services*, 712 F.3d 461, 466 (9th Cir. 2013).

Nor has SGS established associational standing on behalf of its members. Associational standing requires that: (1) an association's members independently possess standing, (2) "the interests it seeks to protect are germane to the organization's purpose," and (3) neither the claim nor the relief requested requires participation of the individual members. *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996). As to the first element, T.S. and K.S. lack standing for the reasons discussed above, and Plaintiffs fail to identify any other members with standing. *See Soule*, 90 F.4th at 46. As to the third element, determining the Title IX claims would necessarily require individualized proof as to each individual member's participation in a specified race or activity, as would Plaintiffs' claims for compensatory damages. *See Nat'l Fed'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1192 (N.D. Cal. 2007), *citing Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004). For these reasons, SGS fails to establish organizational or associational standing.

## II. SOVEREIGN IMMUNITY BARS PLAINTIFFS' CHALLENGE TO STATE LAW

As stated in the Motion, both the AG and the SPI enjoy Eleventh Amendment sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 101-02 (1984). While there is an exception to sovereign immunity where state officials are allegedly violating federal law (*Ex parte Young*, at 155-57), to establish such a claim an official's connection to enforcement must be "fairly direct," and "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992); *see also Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 846-47 (9th Cir. 2002). Plaintiffs' FAC does not plead any facts to show this required connection, and instead pleads only a generalized duty to enforce state law (FAC ¶¶ 78-79), which is insufficient to overcome Eleventh Amendment immunity. *See Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998). Plaintiffs attempt to distinguish *Snoeck* by

arguing that State Defendants' enforcement of state law directly led to the policies and decisions that harmed Plaintiffs. ECF No. 46 at 9:8-12. However, such conclusory statements, without any allegations in the FAC demonstrating enforcement by either the AG or the SPI, are insufficient for the purposes of establishing federal court jurisdiction. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter"). Thus, on the facts pled, the claim fails.

### III. PLAINTIFFS FAIL TO STATE COGNIZABLE CLAIMS AGAINST STATE DEFENDANTS

#### A. Plaintiffs Fail to Establish That State Defendants Are Proper Defendants for Their Title IX Claims

Plaintiffs concede that they have not pleaded that State Defendants are recipients of federal funding for the purposes of Title IX, but instead assert that, since they have alleged that MLKHS receives federal funding and is required to comply with Title IX, "this allegation is sufficient to establish Title IX jurisdiction over state officials." ECF No. 46 at 16:7-8 & n. 5. Plaintiffs cite to no legal authority in support of their position. Plaintiffs also fail to explain how State Defendants can be held liable for the intentional sex discrimination allegedly caused by the school district.[7] As well-established case law holds, it is the *institution* that is liable for Title IX violations, not individuals. *See Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640-41 (1999). Therefore, even if Plaintiffs were to amend the FAC, Plaintiffs have offered no authority to establish that State Defendants are proper defendants to their Title IX claims based on the alleged conduct and actions by school district employees.

Plaintiffs argue that State Defendants are proper defendants because they are challenging state law. ECF No. 46 at 9:2-4. But Plaintiffs' FAC pleads substantive Title IX claims against State Defendants, seeking money damages, based on alleged preferential treatment and discriminatory conduct by the school's athletic director.

---

[7] State Defendants do not contend that the school defendants have any liability.

6

ECF No. 28 (FAC ¶¶ 287-307). Such claims are improper against State Defendants.[8]

### B. Plaintiffs Fail to Plead Facts That Support Title IX Claims

Plaintiffs also have not plausibly alleged facts to support intentional sex discrimination attributable to State Defendants. Plaintiffs argue that "the decision to allow biological male athletes to compete in girls' events . . . is the direct result of official state policy mandated by AB 1266." ECF No. 46 at 18:13-16. However, there are no facts in the FAC "of any official state policy" or that allege any enforcement action by either the AG or the SPI; all that is alleged is the existence of a lawfully enacted state law. FAC ¶ 73; ECF No. 46 at 3:2-8. Moreover, as explained above, Plaintiffs' allegations in the FAC center on the alleged preferential treatment by the athletic director, which negates any implication that AB 1266 was the "root cause" of Plaintiffs' injuries. FAC ¶¶ 140, 144, 291-296; ECF No. 46 at 7:15-20; *see Ashcroft*, 556 U.S. at 678-82.

Next, Plaintiffs assert that, because AB 1266 does not have a comparable effect on the boys' cross-country team at MLKHS, a Title IX violation has occurred. ECF No. 46 at 1:7-9. However, Plaintiffs have cited to no authority to support such a claim. Indeed, Title IX is intended to combat inequalities in programs and activities receiving federal funding and is aimed at addressing discrimination based on sex and sex stereotypes; it is not designed to ensure that boys and girls are equally discriminated against. *See, e.g.*, *Parents for Priv. v. Barr*, 949 F.3d 1210, 1228 (9th Cir. 2020) ("Plaintiffs cite no authority to support the notion that 'equal harassment' against both sexes is cognizable under Title IX."). This argument should thus be rejected.

Plaintiffs likewise fail to cite to any facts in the FAC that support a Title IX claim based on either effective accommodation or unequal treatment. Plaintiffs

---

[8] As explained above, any state law challenge likewise fails because Plaintiffs lack standing and the claim is barred by sovereign immunity under the facts pled.

reference the one race where T.S. competed on the junior varsity roster as a "lost opportunity to compete." ECF No. 46 at 19:5-7. Plaintiffs also conclusively state that M.L. "claimed numerous rankings, podium finishes, and awards" that "would have otherwise gone to female athletes." *Id*. at 19:7-9. Finally, Plaintiffs speculate that "[a]llowing biological males to compete in female athletics will largely displace female athletes from advancing to higher levels of competition and winning championships," but fail to reference any factual allegations or data demonstrating that this is actually occurring. *Id*. at 19:16-18.

As stated above, the FAC does not plead any instance where Plaintiffs *themselves* lost rankings, podium finishes, or awards due to M.L.'s participation. In addition, the allegations fail to show any *systemic effect* on a program-wide basis, and there are no facts alleged in the FAC to establish that participation opportunities for female students are substantially disproportionate to their respective enrollments. *See Neal v. Bd. of Tr.s of Cal. State Univ.*, 198 F.3d 763, 767-68 (9th Cir. 1999) (explaining that effective accommodation claims are analyzed under a three-part test, the first of which evaluates whether a school's participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments.); *see also Davis*, 526 U.S. at 652 (the effect of the challenged practice must be "serious enough to have the systemic effect of denying the [plaintiff] equal access to an educational program or activity").

Indeed, there are no allegations that Plaintiffs have been unable to participate on the girls' cross-country team; no allegations that cisgender female students are underrepresented or substantially disproportionate in numbers on the team or in competitive events; and no allegations that **one** transgender student renders the quality of competitions inferior to the boys' competitions or deprived Plaintiffs of winning awards, medals, or opportunities for advancement to any significant extent. *See Id*. ("a single instance of interference with a student's access is unlikely to rise

8


to the level of a 'systemic effect.'"). Rather, Plaintiffs' claims, which are based solely on gender stereotypes, amount to nothing more than a speculative fear of something that has not actually transpired. These facts are not only insufficient to establish standing, but they are wholly insufficient to state Title IX claims. *Cf.*, *Hecox v. Little*, 104 F.4th 1061, 1083 (9th Cir. 2024), *as amended* (June 14, 2024) (holding that the district court's finding it was unlikely that transgender women would displace cisgender women from women's sports, given their small percentage of the general population, was not in error). Plaintiffs' reliance on *Soule* and other out-of-circuit opinions ignores the well-established binding precedent in the Ninth Circuit that outright bans against transgender students' athletic participation violate the rights of transgender students. *See, e.g.*, *Hecox,* 104 F.4th at 1091 (Idaho statute); *Doe v. Horne*, 115 F.4th 1083, 1112 (9th Cir. 2024) (Arizona statute); *see also Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1118 (9th Cir. 2023) (*Bostock* holding applies to Title IX claims). Thus, Plaintiffs' claims under Title IX fail.

### C. Plaintiffs Fail to Address State Defendants' Notice Argument

To be liable for damages under Title IX, State Defendants must have had clear notice from Congress that allowing a transgender girl to participate on a high school girls' cross-country team violates Title IX. *See Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Plaintiffs do not dispute that neither the statutory text of Title IX nor its implementing regulations mandate the exclusion of transgender girls from girls' sports teams. ECF No. 46. Instead, Plaintiffs argue that pre-litigation notice is not required when there is an "official policy," citing to *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 290 (1998) and *Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 967 (9th Cir. 2010). ECF No. 46 at 16:17-24. But the analysis of prelitigation notice in those cases has no bearing in this case. In *Gebser*, the Supreme Court defined the scope of a school's potential liability under Title IX for sexual harassment cases and held that damages

will not lie under Title IX unless an official who has authority to address the alleged discrimination has actual knowledge of the alleged discrimination and fails to adequately respond. *Gebser*, 524 U.S. at 290. In *Mansourian*, female plaintiffs brought a suit against a university, claiming that their exclusion from the university's men's wrestling team violated Title IX and their equal protection rights. 602 F.3d at 961-63. The district court dismissed their claims, concluding that the university could not be liable for damages unless the plaintiffs first provided the university with notice of their alleged mistreatment and an opportunity to cure it. *Id*. at 967. The Ninth Circuit court reversed, holding that "[p]roof of actual notice is required only when the alleged Title IX violation consists of an institution's deliberate indifference to acts that 'do not involve official policy of the recipient entity.'" *Id*. The Ninth Circuit reasoned that *Gebser's* judicially imposed notice requirement for harassment cases would be superfluous since "the notice requirement would not supply universities with information of which they are legitimately unaware." *Id*. at 968.

Neither of these cases bear on the *Pennhurst* notice requirement required in this case–that is, notice *from Congress* either through the text of the statute or its regulations as to the types of conduct that would be deemed a violation of Title IX. *See, e.g.*, *Horne*, 115 F.4th at 1110 (recognizing that it may not have been clear to a state when it accepted federal funding that Title IX does not authorize distinctions based on assigned sex). Notably, Plaintiffs fail to address State Defendants' argument that there is no conflict between Title IX and AB 1266, and they fail to refute that nothing in Title IX or its implementing regulations specifies that only "biological" females can play girls' sports in high school.[9] For the foregoing reasons, the Motion should be granted.

---

[9] Plaintiffs reference matters that involve non-parties and out-of-state entities, occurring *after* the events in this case. *See* Plaintiffs' Request for Judicial Notice. Such matters are not relevant, and none are binding on the Court's independent interpretation of Title IX and the facts in this case. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024); ECF No. 41-4 at 14:23-26.

| | | |
|---|---|---|
| 1 | Dated: May 2, 2025 | Respectfully submitted, |
| 2 | | |
| 3 | | ROB BONTA<br>Attorney General of California |
| 4 | | ***/S/Stacey L. Leask*** |
| 5 | | STACEY L. LEASK<br>Deputy Attorney General |
| 6 | | *Attorneys for State Defendants* |

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | **Save Girls' Sports, et al v Tonly Thurmond, et al.** | No. | **5:24-cv-02480-SSS-SP** |

I hereby certify that on <u>May 2, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATE DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>May 2, 2025</u>, at San Francisco, California.

| | |
|---|---|
| G. Guardado | */s/ G. Guardado* |
| Declarant | Signature |

SA2025300597
44612302.docx