ADVOCATES FOR FAITH & FREEDOM
Robert H. Tyler (SBN 179572)
btyler@faith-freedom.com
Julianne Fleischer (SBN 337006)
jfleischer@faith-freedom.com
25026 Las Brisas Road
Murrieta, California 92562
Telephone: (951) 304-7583

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAVE GIRLS' SPORTS, an unincorporated California association; T.S., a minor by and through her father and natural guardian, RYAN STARLING, individually, and on behalf of all others similarly situated; and K.S., a minor by and through her father and mother and natural guardians, DANIEL SLAVIN and CYNTHIA SLAVIN, individually, and on behalf of all others similarly situated;<br><br>          Plaintiffs,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF EDUCATION; RIVERSIDE UNIFIED SCHOOL DISTRICT; LEANN IACUONE, Principal of Martin Luther King High School, in her personal and official capacity; and AMANDA CHANN, Assistant Principal and Athletic Director of Martin Luther King High School, in her personal and official capacity;<br><br>          Defendants. | Case No. 5:24-cv-02480-SSS-(SPx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' RIVERSIDE UNIFIED SCHOOL DISTRICT, LEANN IACUONE, AND AMANDA CHANN'S MOTION TO DISMISS**<br><br>Date:    February 6, 2026<br>Time:    2:00 p.m.<br>Dept:    Courtroom 2: Via Zoom<br>Judge:  Honorable Sunshine Sykes |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................ 1

II. STANDARD OF REVIEW .............................................. 2

III. STATEMENT OF FACTS ............................................. 3

IV. ARGUMENT ......................................................... 5

    A.   Plaintiffs Have Stated Claims Under Title IX's For Lack of
        Effective Accommodation and Equal Treatment ................................... 5

        1.   Defendants' enforcement of AB 1266 violates Title IX as a
            structural matter because Title IX requires either separate
            male and female teams or integrated teams. ............................. 7

        2.   Defendants' enforcement of AB 1266 denies Plaintiffs
            effective accommodation under Title IX. ................................... 9

        3.   Defendants' enforcement of AB 1266 results in unequal
            treatment of female athletes because it reduces the quality
            and kinds of benefits and opportunities available to women ......11

    B.   Plaintiffs Have Standing For Injunctive Relief Because They
        Continue To Have To Compete Against Male Athletes .....................13

    C.   The Second Amended Complaint Conforms With This Court's
        September 24th, 2025 Order ...........................................15

        1.   Adding the Department of Education addresses the Court's
            concerns regarding standing and redressability ........................16

        2.   Adding Claim 7 and Claim 8 addresses the Court's request
            that Plaintiffs bring any future "Facial" and "As-Applied"
            challenges separately ................................................17

        3.   Adding allegations related to A.H. demonstrates how
            biological males inclusion in female sports injures Plaintiffs ....18

    D.   Leave To Amend Should Be Granted...................................19

V. CONCLUSION ......................................................20

CERTIFICATE OF COMPLIANCE...................................21

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*,
57 F.4th 791 (11th Cir. 2022)..................................................................7, 9, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................2

*B.P.J. v. W. Va. State Bd. of Educ.*,
98 F.4th 542 (4th Cir. 2024)........................................................................7, 13

*Bras v. California Pub. Utilities Comm'n*,
59 F.3d 869 (9th Cir. 1995)..............................................................................13

*Foman v. Davis*,
371 U.S. 178 (1962)..........................................................................................19

*Grimm v. Gloucester Cnty. Sch. Bd.*,
972 F.3d 586 (4th Cir. 2020).............................................................................7

*Horner v. Ky. High Sch. Athletic Ass'n*,
43 F.3d 265 (6th Cir. 1994)................................................................................5

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)..........................................................................13

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014)............................................................................2

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)............................................................................................6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)............................................................................................2

*Mansourian v. Regents of Univ. of Calif.*,
602 F.3d 957 (9th Cir. 2010)..............................................................................9

*McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*,
370 F.3d 275 (2d Cir. 2004)..........................................................................9, 12

*Ollier v. Sweetwater Union High Sch. Dist.*,
768 F.3d 843 (9th Cir. 2014)......................................................................11, 13

*Rakas v. Illinois*,
439 U.S. 128 (1978)..........................................................................................16

*Roberts v. Colo. State Bd. of Agric.*,
998 F.2d 824 (10th Cir. 1993)............................................................................9

*U.S. v. Ritchie*,
342 F.3d 903 (9th Cir. 2003)..............................................................................4

*United States v. Brandau*,
578 F.3d 1064 (9th Cir. 2009)..........................................................................14

*United States v. Geophysical Corp. of Alaska*,
    732 F.2d 693 (9th Cir. 1984) ............................................................................13
*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................................16
*Williams v. Sch. Dist. of Bethlehem, Pa.*,
    998 F.2d 168 (3d Cir. 1993) .............................................................................. 5
*Wyler Summit P'ship v. Turner Broad Sys., Inc.*,
    135 F.3d 658 (9th Cir. 1998) ............................................................................. 2
*Young v. Crofts*,
    64 F. App'x. 24 (9th Cir. 2003) ......................................................................... 2

Statutes

20 U.S.C. § 1681(a) ................................................................................................1, 7
20 U.S.C. § 1682 ....................................................................................................... 8
Article III of the Constitution ...............................................................................16
Cal. Educ. Code § 221.5(f) ....................................................................................... 4
California Education Code § 221.5 .......................................................................... 4

Rules

Fed. R. Civ. P. 15(a)(2) ...........................................................................................22

Other Authorities

44 Fed. Reg. ......................................................................................................passim
44 Fed. Reg., 71,418 ...............................................................................................14
AB 1266 ..............................................................................................................passim
27 Duke J. Gender L. & Pol'y 69 (2020) .........................................................7, 13

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

# I. INTRODUCTION

Prior to the 1970s, educational institutions commonly upheld discriminatory policies and practices that denied women equal opportunities. Nowhere was this disparity more apparent than in athletics, where women's programs lagged significantly behind men's in team availability, funding, equipment, and levels of competition.

Title IX was enacted to remedy these inequalities by ensuring that women would not be "excluded from participation in, be denied the benefits of, or be subjected to discrimination" under any educational program. 20 U.S.C. § 1681(a). Title IX has done much to erase many of the inequalities that exist between men's and women's sports programs. This includes requiring, in several circumstances, for men and women have separate programs divided by biological sex that provide equivalent levels of competition, resources, benefits and opportunities.

California has taken a step backwards in enacting AB 1266 to allow for students to compete on the athletic team based on their gender identity rather than biological sex. The results have been predictable as male-to-female athletes have been wildly successful, taking away awards, recognition, and opportunities away from biological women. Because of inherent physical and physiological advantages, biological male athletes have an advantage over female athletes that makes competition between the two unfair. As well as being unfair, AB 1266 violates Title IX by allowing biological males on teams that Title IX requires to be segregated based on biological sex.

The Second Amended Complaint ("SAC") alleges ongoing, concrete, and redressable injuries to two current female student-athletes and to Save Girls' Sports, an organization dedicated to preserving competitive equity for girls. The District's Motion rests on misrepresentation of this Court's order, an erroneous view of Article III standing, and mischaracterization of Title IX. None of these arguments withstand scrutiny.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

Title IX's mandate is clear: educational programs receiving federal funds may not discriminate on the basis of sex. Riverside Unified School District ("District") accepted federal funds subject to that condition and may not now elude review of its own enforcement policies that inflict sex-based harm. Because the SAC states actionable Title IX claims and alleges live, traceable, and redressable injuries caused by CDE's policy, the Motion should be denied.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion seeks to dismiss a suit for failing to state a claim upon which relief can be granted. To survive a 12(b)(6) motion, a complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When deciding a Rule 12(b)(6) motion, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non- moving party." *Wyler Summit P'ship v. Turner Broad Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). If a complaint provides fair notice of the claim and the factual allegations are sufficient to show that the right to relief is plausible, a court should deny the defendant's motion. *See Ashcroft*, 556 U.S. 662.

A Rule 12(b)(1) motion to dismiss for lack of standing "can only succeed if the plaintiff has failed to make 'general factual allegations of injury resulting from the defendant's conduct.'" *Young v. Crofts*, 64 F. App'x. 24 (9th Cir. 2003) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). The Ninth Circuit takes the plaintiffs' "allegations as true and draw[s] all reasonable inferences in the plaintiff's favor . . . [and] determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

### III. STATEMENT OF FACTS[1]

In 1976, the California legislature enacted California Education Code § 221.5, which prohibits elementary and secondary schools from discriminating against students based on their sex in both academic and non-academic courses. SAC, ¶ 71. In 2013, it was amended to state that "a pupil shall be permitted to participate in sex-segregated school programs and activities, including athletic teams and competitions, and use facilities consistent with his or her gender identity, irrespective of the gender listed on the pupil's records." *Id.*, ¶ 73 (emphasis added); Cal. Educ. Code § 221.5(f). In short, AB 1266 permits biological males to participate in otherwise exclusively female athletic programs. The effects of AB 1266 have been devastating to fairness and equality in female sports, and the law violates Title IX.

Off the field, allowing biological males into female locker rooms, bathrooms, and historically private places has undermined Plaintiffs' and other biological girls' privacy, safety, and access to these areas. *Id.*, at ¶¶ 169, 171-73. On the field, biological male athletes have dominated female sports due to biological and physical advantages. *Id.*, ¶¶ 42, 43, 163-69, 338, 356-361, 376, 381, 396.

Plaintiffs' Second Amended Complaint focuses on the opportunities and benefits they were deprived of due to Defendants' enforcement of AB 1266. Specifically, that Defendants have allowed two transgender athletes to compete against them in women's track and field, cross-country, and volleyball and that they continue to enforce a policy that violates federal law. M.L. is a biological male athlete who competes on Martin Luther King High School's (MLKHS) girl's cross-country and track and field teams. *Id.*, ¶¶ 113-138,362. M.L. competes in multiple events and has been especially successful in hurdle events. *Id.*, ¶¶ 156-160. Martin Luther King High School is part of Riverside Unified School District (RUSD). *Id.*, ¶ 152. A.H. is

---

[1] Plaintiffs incorporate the Statement of Facts from the Court's order, ECF No. 68 Ord re MTD.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

a biological male athlete who competes on Jurupa Valley High School (JVHS) women's volleyball and track and field teams. *Id.*, ¶¶ 163, 167. While JVHS belongs to a separate district, JVHS often competes against Plaintiffs in athletic events, especially at the regional and state level. *Id.*, ¶¶ 163-167, 393; *see also* RJN, Ex. A-C.[2] A.H. is presently a junior and is the state champion in several track and field events in 2024-2025 season. SAC ¶ 378. A.H. also competed on JVHS's women's volleyball team for the 2024-2025 season. *Id.* ¶ 168. This past volleyball season, 10 teams forfeited their games against JVHS to avoid competing against a biological male on the JVHS team to preserve their female athletes' safety and privacy. *Id.* ¶ 168.

Together, M.L. and A.H. have deprived biological female athletes of numerous opportunities, including displacing females from positions on teams, winning medals, setting or maintaining records, accolades, advancement, and fair competition. *Id.*, ¶¶ 140, 361, 392. Each time that M.L. or A.H. medals or wins an event, they deprive a biological female of the award and any downstream results of a better placement – such as college recruitment, scholarships, or other recognition. *Id.* ¶ 351. And each time that M.L. or A.H. takes the field, their biological female teammates and opponents are deprived of an equal and fair competition that accommodates their abilities and level of competition. *Id.*, ¶¶ 364, 392, 430.

In the present matter, Defendants RUSD and its administrators have brought a motion to strike several of Plaintiffs' allegations and seeking to dismiss Plaintiffs' Title IX claims. Because each amendment falls within the scope of amendment permitted by this Court and because Plaintiffs have stated valid Title IX claims, this Court should deny Defendants' motion.

---

[2] While the Court typically cannot consider evidence outside the pleadings in a 12(b)(6) motion, it can consider certain materials such as matters of judicial notice. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

# IV. ARGUMENT

**A.**    **Plaintiffs Have Stated Claims Under Title IX's For Lack of Effective Accommodation and Equal Treatment**

Title IX was a groundbreaking step forward for women's equality, helping to provide women more equal educational opportunities and benefits, including in the athletic arena. Due to its protections, the number of women playing college sports has increased from 30,000 in 1981 to over 200,000 in 2017 and the "interest gap" in sports has narrowed between sexes. *See* Genevieve Carlton, *How Title IX Impacts Women's Equality in College Athletics*, Best Colleges (Nov. 19, 2021); *Neal v. Cal. State Univ.*, 198 F.3d 7S63, 767 (9th Cir. 1999). These advancements are the result of Title IX's promise that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX guarantees female athletes "real opportunities, not illusory ones." *Williams v. Sch. Dist. of Bethlehem, Pa.*, 998 F.2d 168, 175 (3d Cir. 1993). For an institution to be compliant, it must actually provide equal athletic opportunities for both sexes. *Horner v. Ky. High Sch. Athletic Ass'n*, 43 F.3d 265, 273–74 (6th Cir. 1994).

The benefits gained from participating in high school sports have serious, significant and lasting benefits. Doriane Coleman, Michael Joyner, & Donna Lopiano, *Re-Affirming the Value of the Sports Exception to Title IX's General Discrimination Rule*, 27 Duke J. Gender L. & Pol'y 69, 72 (2020) (describing how girls benefit physically, mentally, socially, and economically from equal athletic opportunities). Studies show that girls who participate in athletics have much better long-term outcomes physically, financially, and socially. *See* Rebecca Hinds, *The 1 Trait 94 Percent of C-Suite Women Share* (And How to Get It), INC. (Feb. 8, 2018) (discussing how a 94% of women serving as business executives were former athletes); Kevin Kniffin, Brian Wansink, & Mitsuru Shimizu, *Sports at Work: Anticipated and*

5

*Persistent Correlates of Participation in High School Athletics*, J. Leadership & Organizational Stud., May 2015 at 217–230 (2015) (showing that associates who participated in athletics had greater leadership skills and higher self-confidence and self-respect); John M. Barron, Bradley T. Ewing & Glen R. Waddell, *The Effects of High School Athletic Participation on Education and Labor Market Outcomes*, 82 Rev. Econ. & Stat., at 409-421 (finding athletic participation directly increases future wages and educational attainment). Accordingly, Plaintiffs are not just seeking equality for equality's sake, this lawsuit seeks to ensure that they receive the significant long-term benefits and opportunities promised to them by Title IX.

Ultimately the promises made by the plain text of Title IX cannot be thwarted by regulatory interpretation. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). Title IX also requires that departmental regulations are "consistent with the achievement of the objectives of the statute," namely securing equal athletic opportunities and benefits for biological women. 20 U.S.C. § 1682. This Court must first be guided by the objectives of Title IX and utilize the regulatory interpretations to the extent that they comport with and further the statute's purpose.

Defendants' enforcement of AB 1266 violates Title IX for three reasons. First, as a structural matter, Title IX's definition "sex" and "male" and "female" was based on biological differences between the sexes. By allowing biological males onto female teams, AB 1266 undermines the purpose of Title IX to ensure that male and female programs are equivalent.

Second, because males have biological and physiological differences that give them an advantage in sports like cross-country, track and field, and volleyball, having to compete against males deprives Plaintiffs of a level of competition that match their skill level and abilities. SAC ¶¶ 97, 337, 344. In such cases, Title IX *requires* the Defendants provide them with exclusively female teams and competitions. 44 Fed. Reg. at 71,418. Because Defendants have failed to provide such a team, they have failed to effectively accommodate Plaintiffs' interests and abilities under Title IX.

Third, having to share locker rooms and accommodations with biological males deprives Plaintiffs of equivalent treatment under Title IX as male teams do not have to share with biological females.

>    1.    *Defendants' enforcement of AB 1266 violates Title IX as a structural matter because Title IX requires either separate male and female teams or integrated teams.*

Title IX's use of the term sex, male, and female refer to biological sex. *See Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.,* 57 F.4th 791, 812–13 (11th Cir. 2022) (collecting dictionary definitions from around the time of the passage of Title IX demonstrating that sex referred to either male or female as determined by biology); *B.P.J. v. W. Va. State Bd. of Educ.,* 98 F.4th 542, 574 (4th Cir. 2024) (Agee, J., dissenting), quoting *Grimm v. Gloucester Cnty. Sch. Bd.,* 972 F.3d 586, 632 (4th Cir. 2020) (Niemeyer, J., dissenting) (collecting definitions). And Title IX requires that, in certain circumstances, that an institution *must* create an exclusively female team. For instance, for non-contact sports if there is a male team there *must* be a female team if (i) the opportunity to play the sport have been historically limited for the excluded sex; (ii) there is sufficient interest from the excluded sex to sustain a team and (iii) the members of the "excluded sex" must not possess sufficient skill to be selected for a single integrated team or to compete actively if selected. 44 Fed. Reg. at 71,418.

Here, Plaintiffs have demonstrated that each element is met such that Defendants are *required* to sponsor female cross-country, track and field, and volleyball teams. Plaintiffs have alleged that their opportunities to participate in high school sports have historically been limited. SAC ¶ 342; *see also* 44 Fed. Reg. at 71,419. Plaintiffs have demonstrated that there is sufficient interest in these sports to sustain a team, as MLKHS has girls' track and field, cross-country, and volleyball teams. *Id.* ¶¶ 81, 152, 362. Lastly, Plaintiffs have alleged that they cannot meaningfully compete on the boys' teams in these sports. SAC ¶¶ 97, 167-68, 337-

7

38, 344. This is further demonstrated by the fact that M.L. and A.H. have dominated in all female athletic events they have participated in. As a junior, A.H. won numerous gold medals at the State meet and has won first or second place in nearly every competition that A.H. has entered. *Id.* ¶¶ 163-68, 378, Similarly M.L. regularly medaled and won numerous awards, including the "MLKHS Senior Girl" award, that otherwise would have gone to female athletes. *Id.*, ¶¶ 121, 151, 156-60, 379. Accordingly, to be effectively accommodated, Title IX requires that Defendants create exclusively biologically female volleyball, cross-country, and track and field teams.

Title IX's implementing regulations also require that male programs be compared to female programs in terms of their equipment, schedules, practices, coaching, locker rooms, policies and every other material aspect of each program to determine an institutions compliance. *See* 44 Fed. Reg. at 71,415-19. This means that the biologically male programs must be compared with the biologically female programs. This is an inherent requirement of Title IX that Defendants completely ignore. Because Defendants do not have separate male and female teams, as understood by Title XII, this comparison is impossible. Under AB 1266, biologically female teams have become extinct because there are no longer *exclusively* female teams as required by Title IX. Practically, Defendants have created a male team and a de facto "co-ed" or "integrated" team. While Title IX generally allows an institution to create a co-ed or "integrated" team, if there is a male team there must be an equivalent female team. 44 Fed. Reg. at 71,418. Congress requires male programs must be compared to female programs to determine if an institution has provided each sex equivalent opportunities, because AB 1266 makes this comparison impossible it undermines Title IX and should be enjoined.

> 2.      *Defendants' enforcement of AB 1266 denies Plaintiffs effective accommodation under Title IX.*

To effectively accommodate student athletes, male and female athletes must be provided both a selection of sports and levels of competition within those sports that accommodate their interests, abilities, and skill level. 44 Fed. Reg. at 71,417-18. *See Mansourian v. Regents of Univ. of Calif.*, 602 F.3d 957, 964-65 (9th Cir. 2010). There must be equivalent quality and kinds of athletic benefits and opportunities provided to both male and female athletes. *Id*. at 964; *Roberts v. Colo. State Bd. of Agric., 998* F.2d 824, 829 (10th Cir. 1993) (emphasis added). Schools can "provid[e] sufficient opportunities for participation" and still fail to accommodate female athletics equally. *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 301 (2d Cir. 2004).

An institution also fails to effectively accommodate a female team where there are "disparities of a substantial and unjustified nature." 44 Fed. Reg., at 71,418. Programs do not have to be unequal as a whole to violate Title IX, rather a violation can occur when a disparity in an "individual segment" is substantial enough to "deny equality of athletic opportunity." *Id*.

Here, female athletes are not effectively accommodated as they are not given competitive opportunities they are entitled to. This unfairness is compounded by the fact that males have physiological and physical differences that give them advantages in athletic events.[3] SAC ¶ 337 (citing *Adams ex rel. Kasper*, 57 F.4th at 812 and Exec. Order No. 14168 (Jan. 20, 2025)), 338, 348, 376. Title IX recognized the physical and physiological differences in male and female that makes competition unfair in certain circumstances. SAC ¶¶ 35-48, 372, 402; *see also* Doriane Lambelet Coleman, et al., *Re-affirming the Value of the Sports Exception to Title IX's General Non-*

*Discrimination Rule*, 27 Duke J. Gender L. & Pol'y 69, 87–88 (2020). For instance, T.S. was removed from her varsity position and the ability to compete in varsity track meets by M.L.. SAC, ¶ 124. Plaintiffs have also lost out on medals, awards, and recognition because A.H. and M.L. have beaten them. *Id.*, ¶¶ 165,412, 393, 429. And overall, Plaintiffs must compete in events with males who have significant immutable advantages – these are disparities that are substantial and unjustified.

AB 1266 also creates an unfair and unequal level of competition because female sport's rules and standards were made to accommodate female's abilities. Male sports have different rules to accommodate their physiological and physical differences from women. For instance, USA volleyball rules dictate male volleyball net heights are typically over 7 inches higher than female net heights. RJN, Ex. D, at 23. Likewise, a male basketball is an inch wider in diameter than a female basketball. *Id.* at Ex. E. Accordingly, allowing males to play with female standards creates an unequal level of competition for females. Female rules were made to accommodate females, allowing a male hurdler to use a lower hurdle amplifies his already existing physical advantages over females.

This is the equivalent of allowing a male wrestler to compete in a lower weight class in the men's division. In wrestling, a wrestler who weighs 145-pounds only wrestles against other wrestlers who weigh 145-pounds or less. These rules are instituted for fairness and to create roughly equal levels of competition. If an 180-pound wrestler were to compete in the 145-pound division, it would create an unfair level of competition and ruin the opportunities for all 145-pound wrestlers. For while he may be equally skilled, the physical differences make competition with his heavier opponent unfair. Likewise, here, while Plaintiffs may be just as skilled, mentally tough, and competitive as any male athletes, but physical differences simply make it unfair for them to compete against males.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

Finally, Defendants rely solely on the regulatory text that discusses three methods for compliance but ignore the overall framework of the regulations. Motion, PageID# 1046. Defendants point out that compliance is determined, in part, on:

> Whether intercollegiate level participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments. *Id*. (citing 44 Fed. Reg., 71,418.)

But this section directly follows the regulations requirement that women must be given a separate team if they do not have ability to compete fairly on the male team. *See* 44 Fed. Reg., 71,418(C)(4)-(5). Accordingly, in the present matter "participation opportunities" refers to the participation in an *exclusively female* sports team. And, as discussed above, the level of participation opportunities is not equal when women have to compete against men.

Likewise, Defendants also argue that compliance considers:

> Where the members of one sex have been and are underrepresented among intercollegiate athletes, whether the institution can show a history and continuing practice of program expansion which is demonstrably responsive to the developing interest and abilities of the members of that sex. *Id*. (citing 44 Fed. Reg. 71,418.)

Again, in the present matter, because RUSD athletes are unable to fairly compete on the male team, Title IX assumes that the referenced "program" would be exclusively female. And as long a males take up female spots in events, as they do in the present matter, females will be underrepresented. For these reasons, the Court should deny Defendants' motion.

3.    *Defendants' enforcement of AB 1266 results in unequal treatment of female athletes because it reduces the quality and kinds of benefits and opportunities available to women*

Title IX also requires "equal treatment" of male and female athletes, which includes "equivalence in the availability, quality and kinds of other athletic benefits and opportunities provided male and female athletes." *Ollier v. Sweetwater Union*

*High Sch. Dist.*, 768 F.3d 843, 854 (9th Cir. 2014). Title IX was created to give women not just a chance to play on the team, but the chance to win. *McCormick*, 370 F.3d at 295. That is why it requires that females be given their own exclusive team if they do not have the skill to compete on the male's team. As the Second Circuit has held, Title IX does not just give girls the chance to play, it gives them the "chance to be champions." *Id.*, at 295.

Defendants allege that AB 1266 does not create a biological boys' team and a coed team, rather, that it allows students "be permitted to participate in sex-segregated athletic teams and competitions consistent with their gender identity. Motion, PageID# 1048. This argument fails for two reasons. First, as discussed above, Title IX does not consider gender identity, rather it mandates separate *male* and *female* teams based on biological sex. *See supra* Section 1(A); *Adams ex rel. Kasper*, 57 F.4th at 812-13 (collecting dictionary definitions from around the time of the passage of Title IX demonstrating that sex referred to either male or female as determined by biology). Accordingly, AB 1266 is *definitionally* wrong when it says that a team can be "sex-segregated" yet incorporate students according to their gender identity. A sex-segregated female team according to Title IX is a team made up of biological females to the *exclusion* of males. Whereas under AB 1266 a "sex-segregated" female team can *include* a biological male. Therefore, as a structural matter, the Defendants violate Title IX by allowing biological males onto the districts "sex-segregated" female teams and by scheduling and allowing those teams to compete against males.

Defendants also argue that because M.L.'s race times often "fall within the times of typical cisgender girls" that Plaintiffs have not been deprived of competitive opportunities that reflect their abilities. Motion, PageID# 1049. This ignores Plaintiffs' allegations that as a biological male, any benefit that M.L. earned deprived the excluded females from the benefit. Together, both M.L. and A.H. have deprived hundreds of females from placements they earned – often of the top placement as both M.L. and A.H. have typically won most of the events they competed in. SAC, ¶ 361.

Furthermore, the regulations state that there must be, "Exclusivity of use of facilities for practice and competitions," including the availability and quality of locker rooms. 44 Fed. Reg., at 71,417. Defendants' policies do not allow for the exclusivity of the locker rooms for female athletes. SAC, ¶ 441. As such, they fail to treat Title IX's equality treatment requirements.

The regulations also state the differences in treatment of the male and female athletic programs violate Title IX where they "have a disproportionately limiting effect upon the recruitment of students of either sex." Here, as courts have noted, "It is no understatement to say that the inclusion of transgender girls on girls' teams will drive many biological girls out of sports and eviscerate the very purpose of Title IX." *B.P.J.*, 98 F.4th at 573 (Agee, J., dissenting). Actual competition takes up only a small part of the high school athletic experience, having to travel, share locker rooms and overnight accommodation takes up as much, if not more, time. When females feel unsafe during these times, they are less likely to join a team. Female athletes feel unsafe when forced to share a locker room with a biological man and discourages them from continuing to participate in athletics. *See e.g.* SAC, ¶¶ 340, 441.

**B.** **Plaintiffs Have Standing For Injunctive Relief Because They Continue To Have To Compete Against Male Athletes**

"Article III of the Constitution requires a party to have standing to bring its suit." *Ollier*, 768 F.3d at 865. Article III standing requires (1) injury in fact – an invasion of a legally protected interest, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision. *Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869, 872 (9th Cir. 1995).

A claim is moot if it has lost its character as a present, live controversy." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (quoting *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 698 (9th Cir. 1984)). But where, as here, a plaintiff challenges a government policy, the case is not moot so long as the policy

remains operative. *United States v. Brandau*, 578 F.3d 1064, 1067 (9th Cir. 2009) ("[A]lthough the particular situation precipitating a constitutional challenge to a government policy may have become moot, the case does not become moot if the policy is ongoing."). The Ninth Circuit has explicitly held that "the continued and uncontested existence of the policy that gave rise to [the] legal challenges forecloses [the] mootness argument. *Id*.

Defendant argues that Plaintiffs do not have standing for an injunction because there is no threat of future injury. Motion, PageID# 1044-45. The Second Amended Complaint does not allege that any Plaintiff has graduated. Because Plaintiffs remain enrolled and subject to Defendant's challenged conduct, they continue to have standing to challenge the unconstitutional District policies. Plaintiffs challenge the Districts' enforcement of AB 1266 in every athletic season and to every girls' sports program in the district.

Defendants next argue that, because A.H. competes for a different school district, an injunction against Defendants would not provide any relief. Motion, PageID# 1044-45. But Defendants control whether Plaintiffs compete against biological males in at least two ways.

First, Defendants help set schedules for the district's athletic programs and allow RUSD teams to compete against other districts' teams. SAC, ¶¶ 310-05. So that while A.H. attends Jurupa Valley high school in the Jurupa Valley Unified School District, Defendants schedule RUSD teams to compete against A.H. and Jurupa Valley and allow those events to proceed, even hosting, assisting, and supervising the events. SAC, ¶ 163; *compare* RJN, Ex. A *with* Ex. B. In 2024, Defendants permitted RUSD teams to compete in track and field, cross-country, and volleyball against A.H.'s teams. SAC ¶¶ 163-168, 361-62, 378, 379; *see also*. And Jurupa Valley and MLKHS competed in the Yorba Linda Invitational in 2025, The Raincross Invitational, 65th Mt. SAC Relays, CIF-SS Finals, and 105th CIF State Track and Field Championship Prelims and Championships. *See* SAC, ¶¶ 106-11, 154-68, n. 1-

14

10; *compare* RJN, Ex. A *with* Ex. B.[4] A.H. has been dominant, taking home the state championship in the long jump and high jump as a junior. SAC, ¶ 163.

Likewise, Defendants allowed several of the District's Girls Volleyball teams to be scheduled against A.H. and Jurupa Valley's girls team. Polytech High School and Ramona High school, both RUSD teams, were scheduled to play Jurupa Valley in 2025 and, instead, forfeit their matches. SAC, ¶¶ 362, 412, 429; RJN, Ex. C. In doing so, RUSD deprived the athletes on those teams of the opportunities and benefits that accompany playing organized high school volleyball. *Id*. For instance, the male volleyball team did not forfeit games for any similar reason.

Second, Defendants continue to allow for biological boys to use female spaces, including bathrooms and locker rooms. SAC, ¶ 169. This has caused several of Plaintiffs to avoid using the locker rooms and bathrooms. SAC, ¶¶ 171-74, 350, 411, 424. This represents a continuing harm as female athletes cannot know whether they will encounter a male when entering such spaces.

Accordingly, Plaintiffs have standing to seek an injunction to prevent Defendants from enforcing AB 1266 in a manner that requires RUSD female athletes to compete against biological males in female sports programs or to share intimate female spaces, such as locker rooms and bathrooms, with biological males.

**C.    The Second Amended Complaint Conforms With This Court's September 24th, 2025 Order**

On September 24, 2025, this Court issued an order dismissing several of Plaintiffs' claims but granting leave to amend to address any deficiencies identified by the order. As discussed below, Plaintiffs' Second Amended Complaint does not include any unrelated or irrelevant claims, rather, every addition directly addresses a

---

[4] The full schedule for Jurupa Valley High School can be found at 2025 Track & Field Schedule, ATHLETIC.NET, https://www.athletic.net/team/1707/track-and-field-outdoor/2025 (last visited January 9, 2026).

deficiency identified by the order. Accordingly, the Court should deny Defendants' request to strike for the reasons detailed below.

> 1.    *Adding the Department of Education addresses the Court's concerns regarding standing and redressability*

As a preliminary matter, it is improper for Defendant**s – RUSD,** Iacuone, and Chann – to vicariously raise an argument on behalf of an unrelated co-defendant. It is a basic legal precept that each defendant has the right and autonomy to raise its own arguments and choose its own defense strategy. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 499 (1975) (discussing how generally a party must assert its own rights, not the rights of a third-party). Here, Defendants fail to allege any facts demonstrating they have the authority to claim third-party standing on behalf of Defendant CDE such that it would be appropriate to raise defenses on its behalf. *See, e.g., Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (denying a defendant's attempt to exclude evidence based on an illegal search of a third-person's property).

Regardless, the addition of the California Department of Education is related to alleged deficiencies in Plaintiffs' prior complaint. In denying Plaintiffs' request for an injunction, this Court stated that there was a question "as to whether and how AB 1266 is enforced by Defendants – in other words, what an injunction would accomplish." ECF 68, Ord re MTD ("Order"), PageID# 768. The addition of the California Department of Education directly answers this question as the CDE has authority to enforce AB 1266 throughout California. SAC, ¶¶ 24, 152. Specifically, the CDE investigates whether AB 1266 is being violated and enforces compliance through various means. SAC, ¶¶ 24, 162, 167, 360. As such, an injunction against the CDE would provide Plaintiffs with the relief they are seeking.

Furthermore, the Court's Order noted that Plaintiffs did not bring claims against the proper parties because Plaintiffs brought a claim against the Attorney General and it was unclear that he had the authority to enforce AB 1266. Order, PageID# 770. The

addition of the CDE fixes this deficiency because the CDE has authority to enforce the statute and, therefore, is the proper party. *See* SAC, ¶¶ 24, 152.

Accordingly, Plaintiffs addition of the California Department of Education was in direct response to the alleged deficiencies noted by the order. Because this addition is within the scope of the order and because it is improper for Defendant to interfere with the CDE's autonomy, this Court should DENY Defendants' motion to strike the CDE as a party.

2.    *Adding Claim 7 and Claim 8 addresses the Court's request that Plaintiffs bring any future "Facial" and "As-Applied" challenges separately*

For the reasons stated above, Defendants are not the proper parties to argue Claim 7 and Claim 8 should be dismissed because each claim is against California's Department of Education. Defendants again impinge on CDE's autonomy by raising defenses on its behalf. On this basis alone Defendants' motion to strike should be denied.

Notwithstanding, the additions of Claim 7 and Claim 8 are related to deficiencies raised by the Court's order. Specifically, the Court held that Plaintiffs' attempt to plead facial and pre-emption-based challenges to AB 1266 were deficient because they were not included as a separate claim in the First Amended Complaint. Order, PageID# 772. Specifically, the order states, "To the extent that Plaintiffs are attempting to plead some type of facial or preemption-based challenge to AB 1266, they must do in a separate claim." *Id*. Plaintiffs directly address this deficiency by adding Claim 7, alleging that AB 1266 violates Title IX on its face and Claim 8, alleging that the CDE's enforcement of AB 1266 violates Title IX. This is in line with the Court's request that "[i]n future complaints, the Court instructs Plaintiffs to separate and clarify their claims." Order, PageID# 771. The addition of Claim 7 and Claim 8 represent the separation and clarification of claims in the manner the Court requested and, therefore, are within the scope of this Court's order.

3.     *Adding allegations related to A.H. demonstrates how biological males inclusion in female sports injures Plaintiffs*

The addition of allegations related to A.H. addresses several deficiencies noted in the order. First, the order noted that because M.L. is a senior, Plaintiffs are not reasonably likely to be injured by having to compete against M.L. next year. Specifically, it stated that for injury to be "particularized" a female athlete must have competed against a transgender athlete and, because M.L. was graduating, the First Amended Complaint did not "plausibly allege[] [Plaintiffs] will continue to be injured in the future" such as to warrant injunctive relief. Order, PageID# 768.

A.H. is a junior biological male who competes on several female athletic teams including volleyball and track and field. SAC, ¶ 163.  As a junior, A.H. will continue to compete against Plaintiffs for at least another year. And, because A.H. has already been highly successful (winning numerous first place finishes and setting state records in track and field), A.H. is likely to continue to win events to the exclusion of K.S., T.S., and the members of Save Girls Sports. SAC, ¶¶ 165-68, 361. As such, the inclusion of A.H. demonstrates how Plaintiffs will be harmed if AB 1266 is not enjoined.

Second, the new allegations add another type of cognizable injury. The order stated that the core injury alleged was lower "intrateam" placement for Plaintiffs. PageID#766. The order then states that Plaintiffs failed to show that the number of participation opportunities for female athletes was not proportional to the opportunities for male athletes. Order, PageID # 773. The inclusion of factual allegations pertaining to A.H., another biological male athlete who is competing against and on the same teams as Plaintiffs, demonstrates the negatively effects to the proportionality of opportunities for biological females. A.H.'s success in numerous events significantly reduces the proportion of medals, placements, awards, and other benefits that would otherwise go to Plaintiffs and other biological female athletes throughout the course of the year. SAC, at ¶¶ 163-168, 361, 378, 393, 412. A.H.'s

18

participation in volleyball has deprived numerous female volleyball players, including members of Save Girls Sports, from the opportunity to play in the 10 games that female teams forfeit rather than risk their safety and play against a male. SAC, ¶ 168, 362. Whereas male athletes are not losing out on medals and placements to female athletes.

Third, the Order states that Plaintiffs failed to make a specific showing of why a Title IX equal treatment claim is appropriate in the present matter. Order, p. 18. Allegations related to A.H. demonstrate the unequal treatment of female athletes who are now required to share a locker room with a male while male athletes receive their own locker room. For these reasons, the addition of the allegations related to A.H. fall within the scope of the Order.

**D.    Leave To Amend Should Be Granted**

In the alternative, Plaintiffs should be granted leave to amend their SAC. Leave to amend must be "freely given" unless it is clear that the proposed amendment is brought after undue and unexplained delay; is offered in bad faith; would be futile; or would be prejudicial to the other parties. *See* Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). None of those factors apply here.

If necessary, Plaintiffs are prepared to amend the complaint to include any additional allegations the Court deems necessary or to address any deficiencies otherwise noted by the Court. If necessary, to promote judicial efficiency and ensure meaningful relief, the Court should grant Plaintiffs leave to amend.

# V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety.

DATED:  January 13, 2026            ADVOCATES FOR FAITH AND
                                    FREEDOM


                                    By:/s/ Julianne Fleischer
                                        Julianne Fleischer, Esq.
                                        Attorneys for Plaintiffs

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that this brief contains 6,135 words, which complies with the word limit of L.R. 11-6.1.


DATED:  January 13, 2026            ADVOCATES FOR FAITH AND
                                    FREEDOM

                                    By:/s/ Julianne Fleischer
                                        Julianne Fleischer, Esq.
                                        Attorneys for Plaintiffs

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS