ADVOCATES FOR FAITH & FREEDOM
Robert H. Tyler (SBN 179572)
btyler@faith-freedom.com
Julianne Fleischer (SBN 337006)
jfleischer@faith-freedom.com
25026 Las Brisas Road
Murrieta, California 92562
Telephone: (951) 304-7583

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAVE GIRLS' SPORTS, an unincorporated California association; T.S., a minor by and through her father and natural guardian, RYAN STARLING, individually, and on behalf of all others similarly situated; and K.S., a minor by and through her father and mother and natural guardians, DANIEL SLAVIN and CYNTHIA SLAVIN, individually, and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF EDUCATION; RIVERSIDE UNIFIED SCHOOL DISTRICT; LEANN IACUONE, Principal of Martin Luther King High School, in her personal and official capacity; and AMANDA CHANN, Assistant Principal and Athletic Director of Martin Luther King High School, in her personal and official capacity;<br><br>Defendants. | Case No. 5:24-cv-02480-SSS-SPx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT CALIFORNIA DEPARTMENT OF EDUCATION'S MOTION TO DISMISS**<br><br>Date:     February 6, 2026<br>Time:    2:00 p.m.<br>Dept:    Courtroom 2; Via Zoom<br>Judge:  Honorable Sunshine Sykes |

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... I

TABLE OF AUTHORITIES ............................................................................... II

I. INTRODUCTION ........................................................................................... 1

II. STATEMENT OF FACTS .............................................................................. 1

III. STANDARD OF REVIEW ........................................................................... 1

IV. ARGUMENT ................................................................................................. 2

    A.    Plaintiffs Face Concrete Injury That This Court Must Address ........... 2

        1.    Plaintiffs' Ongoing Injuries Create a Live and Redressable Controversy .................................................................................... 2

        2.    Plaintiffs Possess Article III Standing ....................................... 6

        3.    Save Girls' Sports has Independent Organizational Standing Resulting from Ongoing Harm .................................................. 11

        4.    Save Girls' Sports has Independent Associational Standing Resulting from Ongoing Harm .................................................. 13

    B.    Title IX Abrogates State Sovereign Immunity And California's Acceptance Of Federal Funds Constitutes A Clear Waiver ................. 14

    C.    The Relevant Notice Question Is Whether States Know They May Not Discriminate "On the Basis of Sex" ............................................ 17

    D.    Plaintiffs Establish Clear Title IX Violations On Both Facial And As-Applied Grounds .......................................................................... 19

        1.    Plaintiffs Properly Bring a Facial Challenge ............................ 19

        2.    California's Gender Identity Policy, as Applied, Violates Title IX ....................................................................................... 21

    E.    In The Alternative, Leave To Amend Should Be Granted ................... 23

V. CONCLUSION ............................................................................................... 23

CERTIFICATE OF COMPLIANCE .................................................................. 24

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

1

# TABLE OF AUTHORITIES

2

Page(s)

Cases

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*,
   57 F.4th 791 (11th Cir. 2022)....................................................................22

*Alexander v. Sandoval*,
   532 U.S. 275 (2001)..............................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................2

*Bennett v. Kentucky Dep't of Educ.*,
   470 U.S. 656 (1985)..............................................................................17

*Bras v. California Pub. Utilities Comm'n*,
   59 F.3d 869 (9th Cir. 1995)......................................................................6

*Cardenas v. Anzai*,
   311 F.3d 929 (9th Cir. 2002)..................................................................16

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)................................................................................7

*Cnty. of Los Angeles v. Davis*,
   440 U.S. 625 (1979)................................................................................4

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000)..............................................................................19

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
   526 U.S. 629 (1999)..............................................................................17

*Demery v. Arpaio*,
   378 F.3d 1020 (9th Cir. 2004)..................................................................5

*Doe v. Madison Sch. Dist. No. 321*,
   177 F.3d 789 (9th Cir. 1999)....................................................................4

*Dorsett v. Sandoz, Inc.*,
   699 F. Supp. 2d 1142 (C.D. Cal. 2010)....................................................20

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
   82 F.4th 664 (9th Cir. 2023)................................................................5, 13

Foman v. Davis,
   371 U.S. 178 (1962)..............................................................................23

*Food & Drug Admin. v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024)........................................................................11, 12

*Fortyune v. AMC*,
   364 F.3d 1075 (9th Cir. 2004)................................................................3, 4

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Franklin v. Gwinnett Cnty. Pub. Schs.*,
  503 U.S. 60 (1992)....................................................................................15

*Friends of the Earth, Inc. v. Laidlaw Env't Servs.*,
  528 U.S. 167 (2000)..................................................................................11

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)..................................................................................13

*Hooks for & on Behalf of Nat'l Lab. Rels. Bd. v. Nexstar Broad., Inc.*,
  54 F.4th 1101 (9th Cir. 2022)..................................................................... 5

*Jackson v. Birmingham Bd. of Educ.*,
  544 U.S. 167 (2005)..................................................................................17

*Kapa'a v. Trump*,
  794 F. Supp. 3d 793 (D. Haw. 2025)........................................................... 8

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)..................................................................... 3

*Knox v. Brnovich*,
  907 F.3d 1167 (9th Cir. 2018)....................................................................19

*Larson v. Valente*,
  456 U.S. 228 (1982)..................................................................................10

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014)..................................................................... 2

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)................................................................................2, 8

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011)....................................................................11

*Meese v. Keene*,
  481 U.S. 465 (1987)..................................................................................10

*Mendia v. Garcia*,
  768 F.3d 1009 (9th Cir. 2014)..................................................................8, 9

*Ne. Fla. Chapter of Associated Gen. Contractors v. City of Jacksonville*,
  508 U.S. 656 (1993)................................................................................... 7

*Newtok Vill. v. Patrick*,
  21 F.4th 608 (9th Cir. 2021)....................................................................2, 14

*Oracle USA, Inc. v. Rimini St., Inc.*,
  81 F.4th 843 (9th Cir. 2023)......................................................................10

*Spencer v. Kemna*,
  523 U.S. 1 (1998)....................................................................................... 5

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
  554 U.S. 269 (2008) ..................................................................................10

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)................................................................................... 7

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

*United States v. Birtle,*
  792 F.2d 846 (9th Cir. 1986) ...................................................................21

*United States v. Brandau,*
  578 F.3d 1064 (9th Cir. 2009) ................................................................. 3

*United States v. Geophysical Corp. of Alaska,*
  732 F.2d 693 (9th Cir. 1984) ................................................................. 3

*Wyler Summit P'ship v. Turner Broad Sys., Inc.,*
  135 F.3d 658 (9th Cir. 1998) ..........................................................2, 4, 19

*Young v. Crofts,*
  64 F. App'x. 24 (9th Cir. 2003) ........................................................... 2

Statutes

20 U.S.C. § 1681(a) ................................................................17, 20, 21
42 U.S.C. § 2000d-7(a)(1) ...................................................................14
Cal. Educ. Code § 221.5(f) .................................................................. 1
U.S. Const. art. VI, cl. 2 ....................................................................19

Rules

Fed. R. Civ. P. 15(a)(2) ......................................................................22

Regulations

34 C.F.R. § 106.1 ...............................................................................21
34 C.F.R. § 106.41(b) ....................................................................19, 21
85 Fed. Reg. 30,026 ...........................................................................18

Other Authorities

AB 1266 ...................................................................................4, 15, 19
Exec. Order 14201 ..............................................................................18
Exec. Order No. 14168 (Jan. 20, 2025) ..............................................21

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

# I. INTRODUCTION

California's Motion to Dismiss seeks the indefensible: to evade liability and sidestep its obligation to uphold the rights of female athletes under its control. ECF No. 76.1, Mot. To Dismiss Sec. Amend. Compl. ("Motion"). This case challenges California's statewide policy that systematically and intentionally denies female athletes equal athletic opportunity in violation of Title IX. For more than a decade, Defendant California Department of Education ("CDE") ("Defendant" or "California") has enforced a gender identity policy that compels school districts to permit biological males to compete in girls' sports and access female-only facilities. *See* Cal. Educ. Code § 221.5(f) ("gender identity policy"). As a result, female athletes, including across California have been displaced from roster spots, championship events, and advancement opportunities, while also suffering loss of educational benefit and privacy harms within sex-separated spaces.

The Second Amended Complaint ("SAC") alleges ongoing, concrete, and redressable injuries to two current female student-athletes and to Save Girls' Sports ("SGS"), an organization dedicated to preserving competitive equity for girls. California's Motion rests on mischaracterizations of the SAC, an erroneous view of Article III standing, and an overbroad theory of sovereign immunity that would render Title IX enforcement against state educational agencies effectively impossible. Because the SAC states actionable Title IX claims and alleges live, traceable, and redressable injuries caused by California's gender identity policy, the Motion should be denied.

# II. STATEMENT OF FACTS

Plaintiffs rely on the factual allegations in their SAC and incorporate it by reference.

# III. STANDARD OF REVIEW

A Rule 12(b)(1) motion to dismiss for lack of standing "can only succeed if the plaintiff has failed to make 'general factual allegations of injury resulting from the

defendant's conduct.'" *Young v. Crofts*, 64 F. App'x. 24 (9th Cir. 2003) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). The Ninth Circuit takes the plaintiffs' "allegations as true and draw[s] all reasonable inferences in the plaintiff's favor . . . [and] determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

When deciding Rule 12(b)(6) motion, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non- moving party." *Wyler Summit P'ship v. Turner Broad Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). If a complaint provides fair notice of the claim and the factual allegations are sufficient to show that the right to relief is plausible, a court should deny the defendant's motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. ARGUMENT

### A.    Plaintiffs Face Concrete Injury That This Court Must Address

California mischaracterizes the nature and scope of Plaintiffs' claims and resulting injuries in an effort to avoid judicial review. Motion, PageID# 972-87. However, California cannot recast Plaintiffs' allegations to fit its preferred narrative. *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021) ("A plaintiff is the master of his complaint . . . .").

#### 1.    Plaintiffs' Ongoing Injuries Create a Live and Redressable Controversy

California's mootness argument ignores the well-pleaded allegations of the SAC and misconstrues Article III doctrine. Motion, PageID# 972–73. Plaintiffs do not challenge a past, isolated event involving a single student, but California's ongoing enforcement of a statewide gender-identity policy and related rules that "permit biological males to compete on girls' athletic teams and access girls' facilities," causing continued loss of competitive opportunities and equal access for female athletes. SAC ¶¶ 422–25, 423.

2

"A claim is moot if it has lost its character as a present, live controversy." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (quoting *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 698 (9th Cir. 1984)). But where, as here, a plaintiff challenges a government policy, the case is not moot so long as the policy remains operative. *United States v. Brandau*, 578 F.3d 1064, 1067 (9th Cir. 2009) ("[A]lthough the particular situation precipitating a constitutional challenge to a government policy may have become moot, the case does not become moot if the policy is ongoing."). The Ninth Circuit has explicitly held that "the continued and uncontested existence of the policy that gave rise to [the] legal challenges forecloses [the] mootness argument." *Id.*

The SAC alleges precisely that. T.S. and K.S. are current student-athletes who "will continue to face harm as long as males are allowed to compete in their sports programs and access female spaces," and they have "upcoming athletic seasons during which a biological male could participate in their events." SAC ¶ 172. [1] SGS likewise alleges continuing organizational injury. SAC ¶ 173. California's suggestion that Plaintiffs must identify a particular transgender athlete fails; Article III requires only a "real and immediate threat," not certainty. *Fortyune v. AMC*, 364 F.3d 1075, 1081 (9th Cir. 2004).

California suggests that Plaintiffs must identify a particular transgender athlete to establish future harm. Motion, PageID# 972-73. Article III requires no such specificity. Plaintiffs need only allege a "real and immediate threat" of future injury,

---

[1] The SAC's allegations challenging the underlying policy that produced the original harm are sufficient to overcome mootness under controlling Supreme Court and Ninth Circuit precedent. *See, e.g.*, *Brandau*, 578 F.3d at 1067. A.H. is participating in track, has won at the state level, and would compete in the girls' events and use the same facilities, thereby displacing female athletes. SAC ¶¶ SAC ¶¶ 163–166. The harm is imminent for all Plaintiffs: Plaintiffs intend to compete in upcoming athletic seasons, and Defendants' policies permit biological males to participate in girls' athletic programs. Even if no male athlete is currently on their teams, every game, practice, and competition presents the opportunity for such participation because Defendants continue to enforce its gender identity policy.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

not certainty or identification of a particular individual. *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004).

Here, Plaintiffs remain enrolled and retain athletic eligibility: K.S. has more than two academic years remaining, and T.S. has at least one semester. SAC ¶ 6. Each upcoming season presents a concrete risk that California's gender identify policy will authorize biological males to compete on girls' teams and access girls' facilities, causing competitive displacement, loss of opportunity, and privacy harms. Those risks are inherent in the policy itself and do not depend on naming a particular athlete in advance. The Court must take "all well-pleaded allegations of material fact [] as true and construe[] [them] in a light most favorable to the non-moving party." *Wyler Summit P'ship*, 135 F.3d at 661. Plaintiffs endure harm so long as biological boys can be in their changing rooms and participate in their athletic programs. Indeed, even now, A.H., a biological boy, is presently competing in track and field and displacing SGS team members. SAC ¶¶ 163-67. Because Plaintiffs remain subject to the challenged policy and seek declaratory and injunctive relief, their claims are not moot. California enforces a gender identity policy that will inevitably harm female athletes. These allegations establish a "legally cognizable interest in the outcome" sufficient to defeat mootness. *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); SAC ¶¶ 172, 422–25.

California's reliance on *Doe v. Madison School District No. 321* is misplaced. Motion, PageID# 972; *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789 (9th Cir. 1999). The SAC does not allege that any Plaintiff has graduated, and *Madison* turned on the plaintiff's own graduation, which eliminated his personal stake in the outcome. 177 F.3d at 798. Because Plaintiffs here remain enrolled and subject to Defendant's challenged conduct, *Madison* provides no basis for dismissal on mootness grounds. Plaintiffs here challenge a statewide policy administered by CDE that applies every athletic season to every girls' sports program in California.

4

The SAC further alleges that biological males have already displaced female athletes on girls' teams, including at Martin Luther King High School. SAC ¶ 429. It also alleges that "[a]s long as AB 1266 is in effect," Plaintiffs and other female athletes "will continue to suffer harm by being subjected to girls' sports programs and spaces that include boys." SAC ¶ 432. Because the challenged conduct is ongoing and prospective, Plaintiffs properly assert claims for declaratory and injunctive relief.

Even if the Court is inclined to hold any of Plaintiffs' claims moot, this case falls squarely within the "capable of repetition, yet evading review" exception. *Demery v. Arpaio*, 378 F.3d 1020, 1026 (9th Cir. 2004); SAC ¶ 174. "This exception applies where '(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Hooks for & on Behalf of Nat'l Lab. Rels. Bd. v. Nexstar Broad., Inc.*, 54 F.4th 1101, 1112 (9th Cir. 2022) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). Short high school athletic seasons and predictable graduation schedules make it impossible for these disputes to be fully litigated before the injury recurs. And as long as California continues to enforce its gender identity policy, female athletes, including Plaintiffs, continue to face harm.

Finally, Plaintiff SGS alleges independent, ongoing harm to its members and mission caused by California's enforcement of the gender identity policy. SAC ¶¶ 173, 429, 432. Organizational standing is not extinguished by the graduation of individual students. *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 680, 683-84 (9th Cir. 2023) (holding that the graduation of individual plaintiffs did not defeat the organization's standing because it continued to represent current and future members subject to the challenged policy). M.L. competed in approximately 27 events, displacing numerous female athletes, including SGS members A.S., R.M., A.R., R.H., and O.V., from roster spots, competitive lanes, finals, and scoring placements. *Id.*; SAC ¶ 429. A.H. likewise displaced SGS members

R.H. and O.V. in 42 track and field events across the 2024–25 season. SAC ¶¶ 163–166.

Because Plaintiffs challenge an active statewide policy, allege ongoing and imminent harm to current athletes and organizational members, and invoke a well-recognized exception to mootness, their claims against California present a live case or controversy and should not be dismissed.

### 2.    Plaintiffs Possess Article III Standing

Article III standing requires (1) injury in fact – an invasion of a legally protected interest, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision. *Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869, 872 (9th Cir. 1995). Plaintiffs allege specific, individualized harms attributable to the State Defendants, who bear responsibility for the implementation and enforcement of the gender identity policy. These harms are not abstract – they are well-plead and supported by factual allegations in the Second Amended Complaint.

### a.    Plaintiffs allege concrete, particularized, and ongoing injuries

California's assertion that Plaintiffs fail to allege a cognizable injury-in-fact mischaracterizes both the SAC and the nature of Title IX protections. Motion, PageID# 973-75. Plaintiffs do not merely allege an abstract interest in athletics or dissatisfaction with competitive outcomes. Plaintiffs alleged loss of equal athletic opportunity, competitive displacement, loss of advancement opportunities, and loss of privacy in intimate facilities as a result of California's enforcement of its gender identity policy. Such injuries are concrete, particularized, and have been suffered and continue to be imminently threatened.

The SAC alleges that California's enforcement of its gender identity policy caused biological males to compete in girls' sports and that such participation directly displaced female athletes. During the 2024 girls' cross-country season, M.L. displaced T.S. from the Varsity Top 7 and competed at the Mt. SAC Invitational in

6

her place. SAC ¶¶ 123, 135, 139.  In the spring track and field season, M.L. displaced multiple SGS members across events, including the Girls' 200m, Varsity 300m Hurdles, and Big VIII League Championships, totaling 27 events. SAC ¶¶ 152–161. In total, "M.L. participated in approximately twenty-seven different track and field events . . . displacing many female athletes, including numerous members of Plaintiff Save Girls' Sports." SAC ¶ 161. Biological male A.H. similarly displaced SGS members R.H. and O.V. in 42 track and field events across the 2024–25 season. SAC ¶¶ 163–166. The SAC also alleges privacy harms: K.S. and T.S. were in the girls' bathroom while M.L. was present, causing them to avoid using the restroom, and SGS member R.M. avoided the locker room to prevent exposure to a male. SAC ¶¶ 170–171.

These allegations establish actual, concrete injury. The Supreme Court has long held that the denial of equal opportunity itself – not any guarantee of winning – is sufficient to establish injury-in-fact. *Ne. Fla. Chapter of Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 666 (1993). Plaintiffs need not allege that they would have won their events absent displacement, any more than a bidder must prove it would have won a contract to challenge discriminatory procurement rules.

Because California's policy affects multiple schools and allows repeated participation by biological males, the alleged harms are ongoing, imminent, and non-speculative. SAC ¶¶ 172–74; *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014) (credible threat arising from enforcement of an active policy satisfies imminence); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) ("Our cases do not uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about. In some instances, we have found standing based on a "substantial risk" that the harm will occur . . . ."). The SAC also alleges that the harm is "capable of repetition yet likely to evade review." SAC ¶ 174.

The SAC's allegations demonstrate ongoing, particularized, and imminent injuries to both current students and the statewide organization, fully satisfying Article III's injury-in-fact requirement for declaratory and injunctive relief.

           *b.*     *Plaintiffs' injuries are traceable to defendant's enforcement of its gender identity policy*

California contends that Plaintiffs cannot establish causation because any alleged harm results from the "independent actions" of school officials. Motion, PageID# 975. This argument misconstrues both the SAC and the applicable Article III standard. Standing requires only that Plaintiffs' injuries be "fairly traceable" to the defendant's challenged conduct – not that the defendant be the sole or proximate cause of harm. *Lujan*, 504 U.S. at 560–61; *see also Kapa'a v. Trump*, 794 F. Supp. 3d 793, 809 (D. Haw. 2025) ("When a plaintiff 'adduce[s] facts showing that those choices have been or will be made in such a manner' as to reflect that they are substantially being caused by government action, the causation element is satisfied."). The Ninth Circuit has similarly recognized that the involvement of independent actors does not sever traceability where the defendant has influenced or compelled the conduct causing harm. *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014).

The SAC alleges far more than passive statutory existence or mere educational commentary. As a recipient of federal funding, California enforces its gender identity policy and compels compliance by local educational agencies ("LEAs"). *See* SAC ¶¶ 24, 77, 78. California actively enforces its gender identity policy and compels compliance by local educational agencies ("LEAs"). SAC ¶¶ 24, 77–78. California issues official interpretations, guidance, and best practices, operates uniform complaint procedures, investigates noncompliance, and directs corrective measures. These mechanisms are the means by which the policy is implemented statewide, including in RUSD and JUSD.

California's enforcement has real-world consequences for female athletes. During the 2024–25 athletic seasons, California's gender identity policy required

8

LEAs, including RUSD, to allow biological males to participate on girls' athletic teams. *See* SAC ¶¶ 152, 162. As a result, male athletes were placed on girls' cross-country, track, and volleyball teams, displacing Plaintiffs and other female athletes from roster spots, competitive lanes, finals, and scoring placements. *See* SAC ¶ 429. For example, M.L. displaced both T.S. and K.S. from varsity cross-country placements and displaced SGS members A.S., R.M., A.R., R.H., and O.V. from track placements in at least twenty-seven events. *See* SAC ¶¶ 152–161. Similarly, a biological male competed on the girls' varsity volleyball team in the Jurupa Valley Unified School District, leading to forfeiture of more than ten matches. See SAC ¶ 429.

These allegations show that Plaintiffs' injuries are not merely the result of independent school decisions but directly traceable to California's enforcement. Plaintiffs challenge the statewide legal regime that places biological males into female athletic programs in the first instance. Absent that enforcement, male athletes would not be eligible for girls' teams, rendering downstream coaching or roster decisions irrelevant.

California's argument that its policy merely provides the "opportunity" for male participation also fails. Creating the opportunity itself establishes traceability: where a defendant sets in motion a chain of causation that foreseeably leads to harm, causation is satisfied. *See Mendia*, 768 F.3d at 1012–14. Here, that chain is direct, foreseeable, and documented across multiple school districts.

California's attempt to downplay causation is further undermined by the U.S. Department of Education Office for Civil Rights' June 25, 2025, Letter of Finding concluding that California's policies "discriminate based on sex against girls in both its language and effect." SAC ¶¶ 414, 426. OCR's findings confirm that California's enforcement—not incidental third-party action—is the operative source of Plaintiffs' competitive, educational, and privacy harms.

Plaintiffs allege ongoing, concrete, and repeatable displacement, loss of competitive opportunity, diminished educational benefit, and privacy harms all resulting from enforcement of the challenged policy. *See* SAC ¶¶ 360, 409–424, 433. These are exactly the types of injuries courts routinely find sufficient for Article III causation.

### c.    *Plaintiffs' injuries are fully redressable by the court*

California's redressability challenge also fails. Motion, PageID# 976–77. Redressability asks, "whether the injury that a plaintiff alleges is likely to be redressed through the litigation." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008). Plaintiffs need not show that relief will remedy every injury—only that a favorable decision will "relieve a discrete injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982); *Meese v. Keene*, 481 U.S. 465, 476 (1987) (partial redress suffices).

An injunction against California's enforcement of its gender-identity policy would directly redress Plaintiffs' injuries. The policy compels schools to place biological males on girls' teams and admit them to girls' facilities, resulting in displacement from roster spots, loss of competitive opportunities, diminished educational benefits, and privacy violations. SAC ¶ 429. Eliminating the policy's legal force would prevent future displacement and protect access to competitive and private spaces.

Plaintiffs' harms are concrete and ongoing. T.S. and K.S. are current athletes with upcoming seasons and Save Girls' Sports represents athletes who have been displaced and will continue to face displacement while the policy remains in effect. SAC ¶¶ 165, 172–74. Each season presents a non-speculative risk of further competitive and privacy harms. *Oracle USA, Inc. v. Rimini St., Inc.*, 81 F.4th 843, 857 (9th Cir. 2023).

California's argument that the policy merely "permits" participation misses the point. Motion, PageID# 976, 986. The injury stems from the legal requirement itself,

not coaching discretion. Eliminating the compulsion removes the cause of displacement. Nor does Article III require that past events be undone—only that relief prevent future harm. *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 185–86 (2000).

California's assertion that Plaintiffs raise a "generalized grievance" is incorrect. Plaintiffs allege specific harms – displacement, loss of opportunities, diminished educational benefits, and privacy violations. SAC ¶¶ 152–172, 360, 409–424. The requested injunction is tailored to prevent them.

California's speculation that relief would "violate the rights of transgender students" (Motion, PageID# 976) is irrelevant to standing and merges standing with the merits. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). The cases California cites involved exclusionary statutes, not policies mandating inclusion, and thus do not bear on redressability.

Because enjoining enforcement would remove the legal compulsion causing displacement, prevent future harms to current students, and redress concrete competitive, educational, and privacy injuries, Article III's redressability requirement is satisfied.

### 3. Save Girls' Sports has Independent Organizational Standing Resulting from Ongoing Harm

Defendant argues that SGS lacks organizational standing because it did not plead injury to its core business activities. Motion, PageID# 977. That argument misreads both the SAC and *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) [*Hippocratic*]. What *Hippocratic* rejected was a diversion-of-resources theory based solely on ideological disagreement – i.e., "spend[ing] a single dollar opposing" a policy one dislikes. *Id.* at 395. The *Hippocratic* Court ruled that *no doctor* in the association claimed individual injury. The Court found that the law that the individual plaintiffs and the association were challenging did not impose the harm alleged: "And we agree with the Government's view of EMTALA on that point.

---

11

EMTALA does not require doctors to perform abortions or provide abortion-related medical treatment over their conscience objections because EMTALA does not impose obligations on individual doctors." *Id.* at 389.

Here, and unlike in *Hippocratic*, Plaintiffs, including the members of Save Girls Sports, are not asserting standing merely because they hold a particular viewpoint. Rather, Save Girls' Sports' members have suffered direct harm resulting from those policies, as this Court has already recognized in its standing analysis. ECF No. 68, Order, PageID# 767 n.7 ("If [permitting of transgender athletes to participate in athletics consistent with their gender identity] constitutes an injury, which the Court finds it does, then the injuries above and beyond that certainly confer standing as well.").

Further, SGS alleges that California's enforcement of its gender identity policy directly impairs SGS's core activities: recruiting female athletes, organizing events, educating families, and facilitating opportunities for girls to participate in single-sex athletic competition. SAC ¶¶ 3, 173, 429, 432. SGS exists to advance equal competitive opportunities for girls. When California's policy requires biological males to compete in girls' sports and occupy girls' roster slots, it frustrates and burdens those activities in at least three ways:

- **Interference with SGS's mission-centered programming.** SGS is unable to conduct events or programming designed to promote and expand girls' athletic participation when female athletes lose roster spots, scoring opportunities, and postseason advancement due to California's policy. SAC ¶¶ 152–161, 429.

- **Impairment of SGS's ability to recruit and retain members.** SGS alleges that displacement of girls from varsity sports has reduced athletic opportunities for prospective members and deterred participation in the very activities SGS supports. SAC ¶¶ 152–172, 429.

12

- **Direct frustration of SGS's advocacy and educational work.** SGS regularly works with families and athletes to ensure access to single-sex competition; California's contrary policy forces SGS to devote time and resources to mitigating the loss of opportunities for girls and to securing access to competitions consistent with Title IX. SAC ¶ 173.

These are not abstract social objections. They are concrete impairments to SGS's core mission and operations – exactly the kind of injury courts have recognized as sufficient organizational harm post-*Hippocratic*. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (organizational standing where defendant's conduct "perceptibly impaired" the organization's mission); *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 680, 683–84 (9th Cir. 2023) (organizational standing where school policy impeded group's mission and programs) [*FCA*].

Indeed, *FCA*, decided after *Hippocratic*, found organizational standing where the challenged policy impaired the organization's ability to operate student groups consistent with its mission, despite the absence of monetary loss or regulatory burden. *Id.* at 683–84. The same is true here.

Defendant's position would mean that an organization dedicated to protecting competitive athletic opportunities for women could never challenge a policy that eliminates those opportunities because such harms inevitably affect the organization's mission. That is not the law. If a State eliminates the very opportunities an organization exists to defend, the organization suffers direct organizational injury.

### 4. Save Girls' Sports has Independent Associational Standing Resulting from Ongoing Harm

Defendant again challenges Save Girls' Sports' associational standing, but this Court has already held that SGS satisfies Article III. ECF No. 68, p. 10 ("However, Save Girls' Sports can establish associational standing."). In any event, the SAC alleges associational standing in detail. SGS identifies multiple members who have

suffered and continue to suffer harm from California's enforcement of its gender identity policy, including Plaintiffs T.S. and K.S., both of whom are current high school athletes who remain subject to displacement in upcoming athletic seasons. SAC ¶¶ 6, 172–174.

In addition to T.S. and K.S., SGS identifies several other female athletes who were displaced by biological male competitors during the 2024–25 track and cross-country seasons, including A.S., R.M., A.R., R.H., and O.V., each of whom lost roster spots, competitive placements, scoring lanes, or advancement opportunities as a direct result of California's policy. SAC ¶¶ 152–61, 429. These members remain eligible for competition and will continue to face the same competitive and educational harms so long as California compels the inclusion of biological males on girls' teams and within girls' athletic programs. SAC ¶¶ 172–74, 429, 432.

SGS therefore satisfies associational standing because its identified members have suffered injuries in fact, those injuries are fairly traceable to California's enforcement of its gender identity policy, and the relief requested would redress those injuries. None of these elements depends on the participation of individual members in their own right.

**B.    Title IX Abrogates State Sovereign Immunity And California's Acceptance Of Federal Funds Constitutes A Clear Waiver**

At the outset, California's sovereign immunity argument rests on a fundamental mischaracterization of Plaintiffs' claims. Motion, PageID# 978-80. Plaintiffs are not asserting abstract "preemption" claims under the Supremacy Clause. Plaintiffs bring concrete Title IX causes of action alleging that California's enforcement of its gender identity policy results in sex discrimination in educational programs receiving federal funds. SAC ¶¶ 409–433. The Supremacy Clause supplies the constitutional rule that makes federal law supreme – it is not itself the cause of action. California may not reframe Plaintiffs' claims to manufacture immunity. *See Newtok Vill.*, 21 F.4th at 616 (plaintiff is the "master" of the complaint).

Title IX provides an implied private right of action and has long been enforceable against state educational entities. *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60 (1992); *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) ("That meant, the Court reasoned, that Congress had intended Title IX, like Title VI, to provide a private cause of action."). States that accept federal education funds, as California undisputedly does, waive sovereign immunity to Title IX suits. Congress expressly abrogated Eleventh Amendment immunity for Title IX claims through 42 U.S.C. § 2000d-7(a)(1), which states: "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of . . . title IX of the Education Amendments of 1972."

Plaintiffs bring a facial challenge and an as-applied challenge to California's enforcement of its gender identity policy. SAC ¶¶ 400-34. Specifically, Plaintiffs' Seventh Cause of Action asserts a facial challenge for "Violation of Title IX," claiming that California's gender identity policy "mandates discrimination against biological females on the basis of sex."[2] SAC ¶ 405. Plaintiffs allege that California's policy, in violation of Title IX, "denies biological females' equal athletic opportunities, including fair competition, podium positions, awards, scholarships, and safe environments in locker rooms and bathrooms." SAC ¶ 406. "This conflict is inherent and unavoidable, as AB 1266 compels schools to disregard biological sex distinctions that Title IX protects and permits." SAC ¶ 407. Likewise, Plaintiffs' Eighth Cause of Action asserts an as applied challenge for "Violation of Title IX," claiming that as a result of California's enforcement of its gender identity policy, among other things that biological males displaced female athletes and caused substantial disruption to the female athletics program. SAC ¶ 429. Plaintiffs further allege that this "as applied enforcement denies Plaintiffs equal athletic opportunities

---

[2] While Plaintiffs raise preemption in the Seventh Cause of Action (SAC ¶¶ 401, 405), Plaintiffs maintain that the Supremacy Clause is the constitutional rule that makes federal law supreme—it is not itself the cause of action.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

under Title IX, including fair competition, effective accommodation of interests and abilities, and equal treatment in athletic benefits. It creates unsafe and unfair environments and subordinates biological females' rights to gender identity preferences." SAC ¶ 430.

These allegations fall squarely within the substantive protections of Title IX and its implementing regulations. Plaintiffs' suit is therefore a straightforward Title IX enforcement action against a state entity that has waived sovereign immunity. Sovereign immunity presents no bar. Generally, the Eleventh Amendment bars a state and state government actors from being sued in federal court without the state's consent. *Cardenas v. Anzai*, 311 F.3d 929, 934 (9th Cir. 2002). Defendant incorrectly asserts that it is immune from all liability under Plaintiffs' Title IX claims. Plaintiff seek declaratory and injunctive relief against the State.

Nevertheless, if the Court is inclined to adopt Defendant's reframing of Plaintiffs' claims as standalone preemptive claims (which it should not), the Court should grant Plaintiffs leave to amend to raise allegations demonstrating that individual state officials have a sufficiently direct connection to the enforcement of California's gender identity policy.[3] Ironically, in their prior motion to dismiss (ECF No. 41.1), Defendant argued that Plaintiffs' Title IX claims were improper because they targeted individual officials rather than a state entity, asserting that only funding recipients may be sued. ECF No. 41.1, p. 11. Now that Plaintiffs have added the entity, Defendant attempts to manufacture immunity asserting that no individual official has been named. This back-and-forth is not a legitimate legal argument and is a transparent attempt to evade judicial review. California's repeated reframing amounts

---

[3] California's assertion that this is merely a "local disagreement" with school staff (Motion, PageID# 979) is belied by the pleadings and by reality. California does not dispute that it enforces its gender identity policy statewide, it mandates compliance by school districts, it directs districts to allow biological males in girls' sports and facilities, and the United States Department of Education found California's policies violate Title IX. SAC ¶ 426. That is not "local." That is statewide, regulatory, and systemic.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

1  to procedural gamesmanship designed to avoid addressing the merits of Plaintiffs'
2  claims.

3        California's immunity theory proceeds only by recasting Plaintiffs' claims into
4  a different theory of its own choosing. Plaintiffs are not attempting to impose new or
5  retroactive Title IX conditions; they are asking the Court to uphold Title IX's existing
6  categorical protections. Plaintiffs allege that California's enforcement of the gender
7  identity policy results in sex discrimination prohibited by Title IX. SAC ¶¶ 409–433.
8  Title IX clearly prohibits discrimination "on the basis of sex" as a condition of federal
9  funding. 20 U.S.C. § 1681(a). California continues to receive substantial federal
10 education funds conditioned on that prohibition. Thus, sovereign immunity does not
11 insulate California from compliance with federal law.

12 **C.    The Relevant Notice Question Is Whether States Know They May Not**
13      **Discriminate "On the Basis of Sex"**

14       The Supreme Court has held that funding recipients need not have advance
15 notice of every factual permutation to which a statutory prohibition might apply.
16 *Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 666–67 (1985) (grant programs
17 cannot "prospectively resolve every possible 'ambiguity'" concerning particular
18 applications of statutory requirements); *Jackson v. Birmingham Bd. of Educ.*, 544
19 U.S. 167, 182–83 (2005) (Title IX gives recipients notice of their obligations even
20 where specific scenarios—such as retaliation or peer harassment—were clarified
21 through later judicial interpretation). What matters is whether the recipient had notice
22 that the conduct falls within the broader statutory prohibition. *Davis Next Friend
23 LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640–41 (1999). Thus, in
24 Jackson the Court held that retaliation for reporting sex discrimination constitutes
25 discrimination "on the basis of sex" even though Title IX does not mention retaliation
26 at all. 544 U.S. at 182–83.

27       Under California's theory, Jackson would have come out the opposite way, and
28 decades of Title IX doctrine recognizing sexual harassment, student-on-student

17

harassment (*Davis*), retaliation (*Jackson*), pregnancy discrimination, and unequal athletic opportunities would fall. None of those categories appears in Title IX's text or regulations, yet all fall within the prohibition on discrimination "on the basis of sex."

California's reliance on *Critchfield* fares no better. Motion, PageID# 14–15. That case involved an Idaho statute requiring students to use restrooms based on biological sex. The Ninth Circuit rejected the Equal Protection challenge and concluded that Idaho lacked clear notice at enactment because the statute predated relevant federal guidance and judicial development. 137 F.4th at 922–26, 929, 931–32. *Critchfield* expressly declined to decide the meaning of "sex" under Title IX, noting the Ninth Circuit had never directly addressed that question, and observed that Executive Orders may provide prospective notice. Id. at 928, 931 n.16.

California continued accepting federal funds long after pertinent judicial guidance and Executive Orders clarified Title IX's requirements. By then, California had unmistakable notice yet continued enforcing a policy that eliminates equal athletic opportunities for girls and compels the inclusion of biological males on girls' teams and in girls' facilities.

This notice was reinforced by the Department of Education's 2020 clarification that recipients must comply with Title IX regardless of conflicting state laws or rules, including CIF rules. 85 Fed. Reg. 30,026, 30,573 (§ 106.6(h)) (May 19, 2020). And as policies permitting biological males to compete in girls' sports proliferated nationwide, federal enforcement properly prioritized protecting the equal athletic opportunities Title IX guarantees. *See* Exec. Order 14201.

California's position would upend Spending Clause civil rights enforcement. If clear notice required Congress to enumerate every future factual scenario, Title IX would be enforceable only against the most obvious and antiquated forms of discrimination. States have been on notice for five decades that acceptance of federal funds carries the condition that they do not discriminate "on the basis of sex."

18

1  California accepted billions under that condition and may not now invoke its own

2  policy choices as a shield against federal enforcement.

3  **D.    Plaintiffs Establish Clear Title IX Violations On Both Facial And As-**

4  **Applied Grounds**

5  Plaintiffs dispute California's reframing of their Title IX claims as purely

6  preemption claims. Plaintiffs maintain that they bring Title IX claims for which the

7  Supremacy Clause provides the avenue for enforcement. Nevertheless, even assuming

8  arguendo that California's characterization is accurate, its argument fails. To the

9  extent California contends that Plaintiffs assert a standalone preemption challenge, its

10  position conflicts with the well-pled allegations in the SAC (¶¶ 4, 405, 407, 412),

11  which must be taken as true at this stage. *Wyler Summit P'ship*, 135 F.3d at 661.

12  **1.    Plaintiffs Properly Bring a Facial Challenge**

13  California asserts that Plaintiffs' Seventh Cause of Action fails because "there

14  is no express preemption clause in Title IX and no actual conflict between Title IX

15  and AB 1266 to preempt AB 1266." Motion at 18. But Plaintiffs allege that the gender

16  identity policy irreconcilably conflicts with Title IX. SAC ¶¶ 4, 405, 407, 412.

17  California's argument therefore not only ignores the operative allegations but also

18  misunderstands the governing law.

19  Under the Supremacy Clause of the United States Constitution, federal law is

20  "the supreme Law of the Land," binding on state officials and invalidating contrary

21  state enactments. U.S. Const. art. VI, cl. 2. "Congress has the power to preempt state

22  law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). "This means

23  that when federal and state law conflict, federal law prevails and state law is

24  preempted." *Knox v. Brnovich*, 907 F.3d 1167, 1173 (9th Cir. 2018). Facial

25  preemption is appropriate where a state law "stands as an obstacle to the

26  accomplishment and execution of the full purposes and objectives of Congress."

27  *Crosby*, 530 U.S. at 373. If the purposes of a federal statute cannot be accomplished

28

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

while a state law operates, the state law must yield. *Dorsett v. Sandoz, Inc.*, 699 F. Supp. 2d 1142, 1162–63 (C.D. Cal. 2010).

California's gender identity policy systematically undermines the objectives of Title IX, which guarantees female athletes fair opportunities in athletics and equitable access to facilities. Title IX protects sex-separated athletic programs and facilities and expressly allows schools to maintain separate teams for each sex where selection is based on competitive skill or the sport is contact-based. 34 C.F.R. § 106.41(b). These provisions ensure equitable athletic opportunities for biological females, recognizing physiological differences that affect competitive fairness, safety, and scholarship access. SAC ¶¶ 42, 337–38, 403.

The gender identity policy frustrates Title IX's core purpose of protecting equal athletic opportunities for biological females. Female athletes, including T.S., K.S., and SGS members A.S., R.M., A.R., R.H., and O.V., have been displaced from girls' cross-country and track teams by biological males, losing roster spots, competitive opportunities, awards, scholarships, and safe use of sex-segregated facilities. No comparable displacement occurs in boys' programs, demonstrating the discriminatory impact on female athletes. SAC ¶¶ 345, 348, 363, 388, 408–10, 422–23. The policy requires California schools to integrate sex-segregated teams and facilities based on gender identity rather than biological sex, forcing schools to disregard distinctions Title IX explicitly protects. Schools must either (1) comply with the gender identity policy and violate Title IX, or (2) comply with Title IX and violate the gender identity policy. That direct conflict renders the gender identity policy facially preempted.

The conflict is outcome-determinative. By compelling schools to admit biological males into female athletic programs, the gender identity policy necessarily denies biological females equal athletic opportunities, including roster spots, competitive fairness, awards, scholarships, and access to sex-separated facilities. 20 U.S.C. § 1681(a). Because the gender identity policy mandates conduct that violates

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

Title IX's sex-based protections in all relevant applications, it is facially invalid under the Supremacy Clause.

Defendants' attempt to characterize Plaintiffs' challenge as speculative, or abstract ignores the direct statutory conflict. Plaintiffs need not await discretionary enforcement to assert facial preemption; the incompatibility arises directly from the text of the gender identity policy and Title IX. Federal law therefore displaces gender identity policy to the extent of the conflict.

## 2.    California's Gender Identity Policy, as Applied, Violates Title IX

Once again, California mischaracterizes Plaintiffs' claims, asserting that Plaintiffs' as-applied preemption claim fails. Motion, PageID# 20–21. California does not address the claim as actually pled. Plaintiffs allege that California violated Title IX by enforcing its gender-identity policy, depriving female athletes of equal athletic opportunities and access to facilities. This is a substantive Title IX claim, not a standalone preemption challenge.[4]

Title IX prohibits discrimination "on the basis of sex" in federally funded educational programs. 20 U.S.C. § 1681(a); 34 C.F.R. § 106.1 et seq. When a state athletic system permits biological males to compete on girls' teams, it undermines the rationale for sex-separate sports. By discarding biological distinctions, the State nullifies the basis for separating teams by sex while imposing competitive burdens on biological females. Once physiological differences are deemed irrelevant, sex separation resembles arbitrary classroom segregation, disadvantaging one sex in practice.

Title IX's regulations permit sex-separate teams where selection is based on competitive skill or where the sport is contact-based. 34 C.F.R. § 106.41(b). This

---

[4] By declining to substantively address the merits of Plaintiffs' Title IX claim in its Motion, California has forfeited any argument on those issues and cannot raise them for the first time in reply. United States v. Birtle, 792 F.2d 846, 848 (9th Cir. 1986) ("The general rule is that appellants cannot raise a new issue for the first time in their reply briefs.").

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

framework exists to preserve female athletic opportunities given physiological differences affecting performance, safety, scholarships, and roster access. Correspondingly, "sex" in Title IX refers to biological sex. *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 812 (11th Cir. 2022); Exec. Order No. 14168 (Jan. 20, 2025). Title IX therefore protects biological females as a class.

California's gender-identity policy requires schools to admit biological males to girls' teams and facilities. As applied, it denies female athletes equal treatment, opportunities, and accommodations. Biological males occupy roster spots, displacing female athletes and reducing participation. Plaintiffs allege displacement at MLKHS and SGS, as well as competitive forfeitures in another district. No analogous displacement occurs in boys' programs.

The policy also deprives girls of athletic benefits tied to competitive success— placement, awards, scholarships, and scouting—critical interests protected by Title IX. It further compromises girls' privacy and safety by granting biological males access to girls' locker rooms and bathrooms, burdens not experienced by male athletes. OCR confirmed that California's policy constitutes sex discrimination against girls. In a June 25, 2025, Letter of Finding to Superintendent Thurmond, OCR concluded that the policy "discriminate[s] based on sex against girls," causes "substantial and unjustified" disparities in athletic benefits and opportunities, and yields "no meaningful impact" for male athletes. OCR's findings validate Plaintiffs' allegations.

Plaintiffs' injuries flow from California's enforcement directives, which require districts to adopt gender-identity policies and impose corrective action through the Uniform Complaint Process. Absent State enforcement, districts would not maintain these policies, and Plaintiffs would not lose roster spots, opportunities, facility access, scholarships, or privacy protections. If the policy remains in force, Plaintiffs and other female athletes will continue to experience the displacement and denial of equal treatment Title IX prohibits.

**E.      In The Alternative, Leave To Amend Should Be Granted**

In the alternative, Plaintiffs should be granted leave to amend their FAC. Leave to amend must be "freely given" unless the proposed amendment is unduly delayed, offered in bad faith, futile, or prejudicial. See Fed. R. Civ. P. 15(a)(2); Foman v. Davis, 371 U.S. 178, 182 (1962). None of those factors applies here.

If the Court accepts Defendant's reframing of Plaintiffs' claims, Plaintiffs are prepared to amend to allege that individual state officials have a sufficiently direct connection to enforcement of California's gender-identity policy.

If necessary to promote judicial efficiency and ensure meaningful relief, leave to amend should be granted.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss.

DATED:  January 13, 2026          ADVOCATES FOR FAITH AND
                                  FREEDOM

                                  By:/s/ Julianne Fleischer_____
                                      Julianne Fleischer, Esq.
                                      Attorneys for Plaintiffs

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that this brief contains 7,000 words, which complies with the word limit of L.R. 11-6.1.

DATED:  January 13, 2026          ADVOCATES FOR FAITH AND
                                  FREEDOM

                                  By:/s/ Julianne Fleischer
                                     Julianne Fleischer, Esq.
                                     Attorneys for Plaintiffs

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS